Rockingham
No. 81-188

JOHN SUNUNU, IN THE INTEREST OF
THE STATE OF NEW HAMPSHIRE

v.

CLAMSHELL ALLIANCE & a.

July 14, 1982

*William E. Brennan P.A.*, of Manchester (*William E. Brennan* on the brief and orally), for the plaintiff.

*Wood & Smart*, of Portsmouth (*Christopher W. Wood* on the brief and orally), for the defendants Adams and Koski.

PER CURIAM. The issue in this case is whether the superior court erred in denying the motion of the defendants Jay Adams and Norma Koski to strike a judgment by default. Finding error, we vacate the default judgment and remand.

On the weekend of May 24, 1980, an anti-nuclear demonstration took place at the Seabrook nuclear power station. The plaintiff, a New Hampshire taxpayer, thereafter sued the Clamshell Alliance, the Coalition for Direct Action, and "John Doe, a participant," on a plea of debt to recover the costs spent by the State to police the demonstration.

On June 12, 1980, a writ of summons was issued against the defendants in which the plaintiff, on behalf of the State, sought reimbursement for $400,000 in damages. Eight days later, the Rockingham County Sheriff attempted service of process on the Clamshell Alliance by leaving a copy of the summons at the Seabrook, New Hampshire abode of Kristie Conrad, a member of the Clamshell Alliance. The Coalition for Direct Action, not a party to this appeal, was served pursuant to the out-of-State service procedure of RSA 510:4 (Supp. 1979). The Coalition has not challenged service of process or the default judgment against it.

Because neither the organizations nor the individuals who participated in the demonstration entered appearances, default was entered against them on August 15, 1980. On October 7, 1980, judgment was entered against them, and damages were assessed at $179,325.62.

On December 4, 1980, two members of the Clamshell Alliance filed a motion to strike the default judgment, asserting that they

were not served with process and did not hear that members of the Clamshell Alliance would be held individually liable until October 1980, after default was entered and damages assessed. They also contended that the Clamshell Alliance had not been served in accordance with RSA 510:13. The Superior Court (*Temple*, J.) denied their motion on the ground that the two movants lacked standing because they had not participated in the May 1980 demonstration. They did not appeal.

Jay Adams and Norma Koski (hereinafter "the defendants"), two members of the Clamshell Alliance who participated in the May 1980 demonstration, filed a motion to strike the judgment by default on April 3, 1981. In their motion and supporting affidavits, the defendants asserted that they had not been served, were not actually or adequately notified of the "matter," and did not know before default judgment was rendered that they would be held liable.

The Superior Court (*Contas*, J.) held a hearing and denied the defendants' motion to strike the default judgment on April 29, 1981. Despite lack of personal or abode service, the court found that "there was sufficient information, State wide, that suit had been brought against the Coalition for Direct Action and the Clamshell Alliance and the defendants knew if they were members of either or both. . . . The Court is of the opinion that the defendants had sufficient notice of the pendency of this suit . . . [and have failed] to show any standing for bringing this motion."

The defendants appealed the court's order and raise the following issues: whether the defendants had standing to bring their motion to strike the default judgment; whether the defendants were actually notified, and if not, whether they were "sufficiently" notified of their liability; and whether the defendants have any other ground for striking the default judgment.

■ The trial court's statement that Adams and Koski lacked standing was incorrect. The Clamshell Alliance and "John Doe, a participant," were named as parties to the suit. Adams and Koski were members of the Clamshell Alliance who participated in the Seabrook demonstration; thus, they were parties defendant. The plaintiff sought to hold them personally liable for the $179,325.62 judgment by default. Because Adams and Koski have a direct and substantial interest in the outcome, they have standing. *See Warth v. Selden*, 422 U.S. 490, 501 (1975). We now consider the notification issue.

The pertinent statutes dealing with service of process upon unincorporated associations are as follows:

"RSA 510:13 *Associations.* Service of writs or other process against unincorporated associations, *joint stock companies,* syndicates, orders or any mutual association of persons, other than a partnership having not more than four members, within this state, may, except when otherwise provided, be made upon any officer thereof; or, if it have no officer, then upon any two members thereof."

"RSA 514:1 *Default.* If a defendant on whom process has been duly served neglects to appear at the court to which the same is returned his default shall be recorded, and judgment shall be rendered against him for such damages as upon inquiry the plaintiff appears to have sustained."

"RSA 514:14 *Notices.* The court shall order notice to be given, in such manner as they think fit, of any petition, complaint, libel, application or motion in writing filed therein, and no judgment or decree shall be rendered thereon without compliance with such order."

■ RSA 510:13 provides that writs or other process against unincorporated associations shall be served on *two* members if the association has no officers. The Clamshell Alliance, which is such an unincorporated association, was not served properly because only one member was served with the writ of summons.

■ The plaintiff claims, however, that the absence of proper service under the statute is cured in some way by media coverage of the litigation. This claim is not persuasive. Notice by publication in a newspaper is permitted only when it is ordered by a court. Such notice must comply with the precise requirements of RSA 510:9. The original must be filed in the court, it must contain a citation containing the title of the case, the name of the court in which it is pending, the time and place of the return and hearing, and the fact that the original is on file and may be examined by interested parties. RSA 510:9. Notice by newspaper publication was not ordered by a court in this case, nor did the "publication" comply with the statute. Thus, it was an improper means of notification.

■■ The purpose of notifying a defendant of the pendency of litigation is to precisely advise him of the nature of the claim, the identity of his adversary, the return date of the proceedings, what he must accomplish to protect his rights, and the consequences of his failure to do so. "An elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections."

*Greene v. Lindsey*, 50 U.S.L.W. 4483, 4484 (U.S. May 18, 1982) (quoting *Mullane v. Central Hanover Tr. Co.*, 339 U.S. 306, 315 (1950). The newspaper articles, clippings and the plaintiff's press releases, which appeared more than fourteen days before the return date, do not meet the criteria set forth above.

If we were to recognize the plaintiff's argument that "media notification" is a substitute for our statutes governing service, people would have to either read, watch or listen to the media in order to be vigilant in the protection of their rights. Our constitution does not impose such an unreasonable burden upon any citizen. Do we read the wrong newspaper, or no newspaper at all, at our peril? The plaintiff's answer in this regard would be that wide media coverage provokes discussion and spreads common knowledge among the citizenry, so if we don't read the press we will hear about the litigation somehow. Yesterday's press is today's hearsay. The law has not put much stock in hearsay, and there is no compelling reason now to rely upon such evidence as a substitute for constitutionally protected and guaranteed due process.

██ The decision to strike a default is within the trial court's discretion and will not be disturbed unless the court clearly abused its discretion or erred as a matter of law. *Brodowski v. Supowitz*, 122 N.H. 694, 448 A.2d 430 (1982); *D'Agincourt v. Anderson Foreign Motors, Inc.*, 119 N.H. 476, 479, 402 A.2d 1340, 1342 (1979); *see American Board of Trade, Inc. v. Dun & Bradstreet, Inc.*, 122 N.H. 344, 346, 444 A.2d 550, 551 (1982). The trial court erred in denying the motion to strike judgment by default because of the lack of proper service against the Clamshell Alliance. The service against the Coalition for Direct Action is not in issue.

The defendants further argue that the plaintiff, a taxpayer, may not bring a lawsuit on behalf of the State of New Hampshire because RSA 7:6 authorizes the attorney general to act as attorney for the State in *all* cases in which the State is interested. In June 1980, the plaintiff asked the attorney general if his office, "as the legal representative of the State of New Hampshire," would like to join as a plaintiff. We have examined the correspondence between the plaintiff and the attorney general and conclude that the attorney general never formally answered this question. His office was aware of the plaintiff's suit, however, and did not move to dismiss it as contrary to the interests of the State of New Hampshire. Rather, the attorney general's office *cooperated* with the plaintiff by giving him a breakdown of the costs incurred by the State in "maintaining order and enforcing the law during the May

674

24, 1980 nuclear power demonstration in Seabrook, New Hampshire."

 Neither the constitution nor the laws of this State authorize a taxpayer to bring a suit on behalf of the State, *see Gallagher v. Continental Insurance Co.*, 502 F.2d 827, 832 (10th Cir. 1974); however, such authority can arise by implication when the attorney general tacitly encourages the claim or assists in its assessment of damages. In this case, the attorney general essentially ratified the plaintiff's suit; therefore, his suit was properly brought on behalf of the State. To avoid problems in this area in the future, any citizen bringing suit in the name of the State should do so only with the express consent of the attorney general in writing which is made a part of the case file in the appropriate court.

*Default judgment against Clamshell Alliance vacated; remanded.*

BROCK, J., did not sit.