Merrimack
No. 83-185

THE STATE OF NEW HAMPSHIRE

v.

RENE L. COOK

August 27, 1984

*Gregory H. Smith*, attorney general (*Loretta S. Platt*, assistant attorney general, on the brief and orally), for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J.   The defendant stands indicted for the felony of violating a court order that had declared him to be an habitual offender under the motor vehicle laws and had prohibited his operation of a motor vehicle. RSA 262:23. The Superior Court (*DiClerico*, J.) has transferred two questions raised by a motion to dismiss the indictment:

(1) Is an habitual offender order valid if it rests upon an uncounselled conviction of a motor vehicle violation?

(2) Is an indigent defendant entitled to appointed counsel at a hearing to determine whether he is an habitual offender?

We answer yes to the first question and no to the second.

For purposes of the motor vehicle laws, an habitual offender is a person who has been convicted of certain combinations of motor vehicle offenses within five years. RSA 259:39. On petition of the State, RSA 262:20 (Supp. 1983), the superior court holds a hearing to determine whether a person is an habitual offender. RSA 262:21. If the court finds he is, it orders him not to drive a motor vehicle until his license to do so has been restored by order of a court. RSA 262:22. Violation of such an order is a felony with a minimum mandatory term of imprisonment. RSA 262:23.

In this case, a stipulation indicated that in 1978 the Superior Court (*Keller*, J.) found the defendant to be an habitual offender, on the basis of four motor vehicle violations. The defendant had no counsel in any of the underlying proceedings, and there is no indication that he waived any right to counsel. It is assumed that at the hearing at which the superior court found him to be an habitual offender he was indigent. He did not have counsel, the court did not offer to appoint counsel at public expense, and the defendant did not waive any right to such counsel.

At that hearing the defendant answered a series of questions from the court. From his answers the court identified the defendant as the person named in the petition and in the motor vehicle record. The court also learned that the defendant did not contest the accuracy of the record of motor vehicle offenses that the State had supplied. The defendant clearly indicated that he understood that after being found to be an habitual offender he would have no right to drive until his license should be restored, and that he would be subject to mandatory imprisonment if he violated the court's order not to drive. After the defendant told the court that he had no questions, the court found him to be an habitual offender and ordered him not to drive. The present indictment charges him with a violation of that order.

The defendant argues that any imprisonment for violating an habitual offender order rests ultimately on the underlying convictions that support that order. He claims each such conviction must be counselled in the sense that it must follow a prosecution in which the defendant either had counsel or knowingly and intelligently waived a right to have counsel at his own or at public expense. On his view, imprisonment for violation of an habitual offender order resting on an uncounselled conviction would be imprisonment based on an uncounselled conviction, so as to violate the rights to counsel provided by part I, article 15 of the Constitution of New Hampshire and by the Sixth Amendment of the Constitution of the United States, which is binding on the States. Thus the defendant concludes that it

would be unconstitutional to find him an habitual offender on the basis of any uncounselled conviction.

Our consideration of the defendant's claim under part I, article 15 of the State Constitution begins with that portion of the constitutional language extending the right to counsel to defendants charged with a "crime or offense punishable by loss of liberty." Under this standard, the uncounselled violation convictions are undoubtedly valid. The defendant therefore must argue that collateral use of the uncounselled convictions would emasculate the guarantee of counsel in a later prosecution for violation of an habitual offender order, or he must rest his claim on the more general language of article 15 which guarantees procedural due process of law. *See Stapleford v. Perrin,* 122 N.H. 1083, 453 A.2d 1304 (1982); *Petition of Harvey,* 108 N.H. 196, 230 A.2d 757 (1967).

Any argument that later assertions of counsel will be ineffective without a right to counsel in earlier collateral proceedings rests upon a "but for" analysis that has not found favor in these circumstances. Only a minority of the Supreme Court of the United States accepted this reasoning in *Baldasar v. Illinois,* 446 U.S. 222 (1980), which we will discuss below. And we have already rejected a "but for" analysis as a basis to claim that the habitual offender order itself is a further penalty for the earlier convictions that justify it. *State v. Vashaw,* 113 N.H. 636, 312 A.2d 692 (1973). We likewise reject that analysis here. We also reject the notion that the requirement of due process forbids the collateral use of the earlier uncounselled convictions. The following considerations of policy support each of these decisions.

We believe that *Mathews v. Eldridge,* 424 U.S. 319 (1976), provides a structure for the kind of analysis and weighing of interests that should underlie decisions about the extension of constitutional guarantees and the application of concepts of procedural due process in this area. *See Royer v. State Dep't of Empl. Security,* 118 N.H. 673, 394 A.2d 828 (1978).

Accordingly, we first consider the interest of the defendant that the requirement of counsel in violation cases would tend to protect. The defendant's interests include a property interest in the amount of fines. They also include a further protected interest in his driver's license, *Bell v. Burson,* 402 U.S. 535 (1971), though this interest can be directly affected by one violation conviction only in a case of driving while under the influence of drugs or liquor under RSA 265:82 to :82-b (Supp. 1983) or in a case of reckless driving or a related offense under RSA 265:79 (Supp. 1983). Last, the affected interests may include a liberty interest, but only in the remote sense that it can be affected by collateral use of a violation conviction in a later

prosecution or under the habitual offender law. Because representation tends generally to produce more reliable adjudication, a guarantee of counsel would tend to foster the reliability of a violation conviction and any collateral use of it.

As the second step in the *Mathews* analysis, we examine the risk of unreliability in uncounselled violation convictions. That risk is small. Since there is no jury trial, there is less need for the organization and aplomb that is important in addressing a body of lay factfinders. In the district courts where most such cases are finally tried, the prosecutor is usually a police officer, not a lawyer. The charges are characteristically simple ones; in this case all four convictions were for driving without a license. The formality of the procedure is minimal. The greatest potential for complications in violation cases inheres in prosecutions for driving while under the influence of intoxicating liquor or drugs as a first offense, RSA 265:82 (Supp. 1983), and reckless driving, RSA 265:79 (Supp. 1983). Yet the chemical testing in the former cases has become standardized, and resolution of the issues of influence and recklessness turns on common-sense judicial judgment rather than on legal technicality. We therefore do not find a serious risk of error in the absence of counsel.

The third of the *Mathews* considerations is the public interest in avoiding undue administrative and fiscal burdens. If we were to accept the defendant's position, either all indigent defendants charged with non-criminal violations would be entitled to counsel at State expense, or the habitual offender law would effectively be confined to a consideration only of misdemeanor and felony convictions. The legislature has clearly indicated that it places a high value on the habitual offender law, and judicial experience in applying the law bears out the legislative judgment. We therefore conclude that eliminating consideration of violation convictions in habitual offender proceedings would be an unacceptable burden, and we proceed to assess the burden of providing counsel in all such cases.

Between July 1, 1981, and June 30, 1982, there were more than 173,000 motor vehicle violation cases in district and municipal courts. NINETEENTH REPORT OF JUDICIAL COUNCIL OF N.H. (1982), at 52–55. Although not all violation convictions are relevant under the habitual offender law, these figures nonetheless indicate that a requirement of counsel would probably be enormously expensive. It would require so much lawyers' time and be so time-consuming in the courts as to raise a question of the present court system's ability to deal with the cases. These considerations weigh heavily, and more so when we consider that most defendants who can afford counsel in such cases choose to appear without it.

■ We conclude that the risk of unreliable convictions is comparatively low, and that the burden on the public from requiring counsel in all violation cases would be very heavy. Accordingly, we conclude that we should not extend the scope of the guarantee of counsel under article 15, or construe the concept of due process under the State Constitution as the defendant would have us do.

In assessing the defendant's argument under the Sixth Amendment, we begin with *Scott v. Illinois*, 440 U.S. 367 (1979), which held that the Sixth and Fourteenth Amendments do not bar an uncounselled State misdemeanor conviction, but only forbid imprisonment upon such a conviction. The present defendant was not imprisoned for any of the convictions underlying his habitual offender status. In fact, each such conviction was for a violation, as strictly defined under New Hampshire law. RSA 625:9, V. A violation is not punishable by incarceration and is not criminal in nature. *Id.* Therefore it is clear that the underlying convictions standing alone are valid under *Scott.*

The defendant's argument does not turn, however, on the validity of the convictions. It turns on the validity of the use of those convictions to sustain an order which in turn can be the basis of imprisonment for its violation. The defendant's argument that otherwise valid convictions may not validly be so used rests on *Baldasar v. Illinois*, 446 U.S. 222 (1980).

The per curiam opinion in that case announced only the result reached by a majority of five Justices. The five agreed that an earlier uncounselled misdemeanor conviction could not be used as a basis to impose an enhanced penalty for a later repetition of the same offense.

The reasons for that result, stated in three separate concurring opinions, do not support the defendant's position in this case, however. Even assuming that the habitual offender provisions may be equated with an enhanced sentencing statute, at the most four of the Justices in *Baldasar* would forbid the use of the uncounselled violation convictions to determine habitual offender status. Justice Marshall would forbid their use on the basis of a "but for" test, under which imprisonment is said to rest for constitutional purposes on an earlier uncounselled conviction if it could not be imposed but for the earlier conviction. *Id.* at 228. Two other Justices joined with him, and Justice Stewart seems to have adopted the same test. *Id.* at 224. But the fifth vote necessary for the result was Justice Blackmun's. In effect, he declined to apply *Scott.* Instead, he followed a rule that counsel should be guaranteed on any charge more serious than a petty offense. *Id.* at 230. On his rule, Baldasar's first conviction was invalid, and on that basis he concurred in the result reached by the

other four. But on his rule the four uncounselled violation convictions in this case would be valid. Since he did not adopt Justice Marshall's "but for" test, there is no reason to believe he would support the present defendant's claim.

While we do not read *Baldasar* as authority for the defendant's position, we do read *Lewis v. United States*, 445 U.S. 55 (1980), as support for the use of the four uncounselled violation convictions as the basis for a valid habitual offender order. The Supreme Court decided *Lewis* shortly before *Baldasar*. Since none of the majority in *Baldasar* mentioned *Lewis*, it presumably is still good law.

In *Lewis* the Court held that a defendant could not collaterally attack an earlier uncounselled and invalid felony conviction that was the predicate of a later prosecution for possession of a firearm by a felon. The Court sustained what it inferred to be the congressional purpose to reach all people in the class of convicted felons, regardless of the validity of the convictions under the Sixth Amendment. The Court held that it was permissible to refer to an earlier invalid conviction for the purpose of identifying a class to which a penal statute applied.

■ The *Lewis* reasoning supports the use of the four convictions in this case more strongly than it supported the result in *Lewis* itself. Here the convictions are unquestionably valid. Here the class of persons to whom the later penal statute applies are not merely identifiable under a legal definition as in *Lewis*, but are actually identified by a separate proceeding giving them a hearing and an explicit warning about the consequences of further unlawful action. We therefore find no violation of Sixth Amendment standards on the facts of this case. *Accord State v. Clough*, 115 N.H. 7, 332 A.2d 386 (1975); *see also Schindler v. Clerk of Circuit Court*, 715 F.2d 341 (7th Cir. 1983). Under both National and State Constitutions, therefore, a valid and enforceable habitual offender order may rest upon uncounselled violation convictions.

■■ When we turn to the second question, about the right to counsel at the hearing to determine habitual offender status, we find many of the preceding considerations applicable. The filing of a petition claiming that a defendant is an habitual offender begins a process that can result in a court's ordering the defendant not to drive for at least four years and until the defendant meets requirements of financial responsibility and obtains a court order restoring his privilege to drive. RSA 262:22. These results are civil rather than criminal in nature, *State v. Bowles*, 113 N.H. 571, 311 A.2d 300 (1973). They do not give rise to any right to counsel under the counsel clause of part I, article 15, which applies only to criminal cases

when deprivation of liberty is possible. JOURNAL OF CONSTITUTIONAL CONVENTION at 177–82 (1964). Nor does the Sixth Amendment mandate the provision of counsel on these facts. *Scott v. Illinois*, 440 U.S. 367. For the reasons we have already discussed, we do not find authority to the contrary in *Baldasar v. Illinois*, 446 U.S. 222.

■■ The question remains whether either the State or federal due process clauses require counsel as a procedural safeguard in such a proceeding. We conclude that neither does. Under the State Constitution, in civil cases even a possible loss of liberty for civil contempt will not automatically give rise to a right to counsel under standards of due process. *See Duval v. Duval*, 114 N.H. 422, 322 A.2d 1 (1974); *cf. Stapleford v. Perrin*, 122 N.H. 1083, 453 A.2d 1304 (1982). Under the Fourteenth Amendment there is a presumption that a defendant has no right to counsel when he will not lose his liberty if he loses the litigation. *Lassiter v. Dep't of Social Services*, 452 U.S. 18 (1981).

Under each of the State and federal standards, the ultimate issue is whether the concept of fundamental fairness embodied in the notion of procedural due process requires a guarantee of counsel. Again we find the analysis followed in *Mathews v. Eldridge*, 424 U.S. 319, helpful in dealing with these questions about the scope of due process. We begin by recognizing that any licensed driver has an interest in retaining his license to drive on the highways. *Bell v. Burson*, 402 U.S. 535.

The risk is small that a defendant will lose his license unjustifiably without a guarantee of counsel in the proceeding to determine whether he is an habitual offender. The direct issues in most habitual offender proceedings are simple, as they were in the present one: was the respondent the person referred to in the record of motor vehicle offenses, was the record accurate and did it list the requisite number of convictions to justify an habitual offender order.

The only issue commonly raised about the validity of any underlying conviction is the defendant's representation or waiver of counsel when counsel is required. Following *State v. Ward*, 118 N.H. 874, 395 A.2d 511 (1978), the State presents a copy of the motor vehicle record that expressly addresses this issue. The record, of course, can be wrong, but it does not require legal training to say that an entry in a motor vehicle record is wrong. If a pro se defendant raises such an issue, we have no reason to doubt he will be given a fair opportunity to develop his claim. Despite fifteen years of experience with the habitual offender procedure, the record contains no evidence of significant error in adjudication, and we know of none.

While the burden on the State of guaranteeing counsel in all such proceedings would not approach the burden of doing so in all violation cases that might be considered as such proceedings, we find that the risk of error is too slight to justify placing a further burden on public funds in every habitual offender case. Thus we conclude that neither State nor federal standards of due process should be construed to require counsel at a hearing to determine status as an habitual offender.

As our citations to such cases as *Lassiter* and *Duval* imply, we recognize that there could be a violation trial or an habitual offender hearing with issues potentially so complicated that a defendant pro se probably could not represent himself adequately. When such cases arise the trial courts have authority to recognize a right to counsel on grounds of due process. But such cases will be rare, and the facts before us do not suggest that this is one of them.

*Remanded.*

All concurred.