Rockingham
No. 83-304

### THE STATE OF NEW HAMPSHIRE

v.

### MAURICE LEMIRE

August 27, 1984

*Gregory H. Smith*, attorney general (*Douglas L. Patch*, assistant attorney general, on the brief), by brief for the State.

*Joanne Green*, assistant appellate defender, of Concord, by brief for the defendant.

BATCHELDER, J. In this prosecution of the defendant for operating a vehicle on a public way after having been declared an habitual offender, questions raised by the defendant concerning the validity of his habitual-offender conviction have been transferred by the superior court.

The defendant in this case was convicted of several motor vehicle offenses between October of 1976 and November of 1977. On October 23, 1976, he was convicted of operating without a license and driving while intoxicated (DWI), each offense occurring on the previous day. On April 14, 1977, he was convicted of operating after revocation of his license on two separate occasions, February 19 and March 11, 1977. On August 18, 1977, he was convicted of reckless operation, DWI, second offense, and operating after revocation of his license, all offenses occurring on May 6, 1977. On November 18, 1977, he was found guilty of DWI, second offense, committed on August 19, 1977.

On March 2, 1982, the defendant was adjudicated an habitual, motor-vehicle offender, see RSA 259:39, in Superior Court (*Cann*, J.) and ordered not to operate a motor vehicle on the highways of the State of New Hampshire. At the hearing which resulted in the adjudication, the defendant asserted that he did not contest any of the convictions listed in the petition.

No appeal was taken by the defendant from the habitual-offender determination. In each of the motor vehicle cases underlying the habitual-offender finding, the defendant pled guilty.

The defendant was subsequently indicted for the offense of operating a vehicle on a public way after having been declared an habitual offender. *See* RSA 262:22, :23. The defendant, now facing mandatory imprisonment if he is found guilty, *see* RSA 262:23, seeks for the first time to raise questions concerning the constitutionality and procedural integrity of his habitual-offender hearing and earlier convictions.

The defendant's questions are raised in an interlocutory transfer from the Superior Court (*Bean*, J.), arising from the defendant's pretrial "motion to vacate habitual offender order." The superior court certified ten questions to this court.

Transferred questions 1 and 4 inquire whether the defendant may collaterally attack his habitual-offender finding, after having failed to appeal it, and whether he is entitled to court-appointed counsel at the habitual-offender hearing. These questions we answer in the negative. Question 10 asks whether uncounselled convictions rendered with or without a valid waiver by the defendant of his right to assistance of counsel may be used in the habitual-offender proceeding. To this question we answer yes. These questions were addressed

fully in *State v. Cook*, 125 N.H. 452, 481 A.2d 823 (decided this date). The *Cook* decision also directly answers transferred questions 5, 7 and 8, which concern varying aspects of waivers of a defendant's right to counsel.

In the motion to vacate habitual-offender order, the defendant raises for the first time due process questions under the State and Federal Constitutions in connection with the four and one-half year delay between the last motor vehicle conviction and the habitual-offender petition. Question 2 asks whether this delay contravened the defendant's right to due process. Question 3 asks whether the defendant's right to the equal protection of the law was infringed by the fact that his habitual-offender status was not determined by the court to be effective on the date of his last conviction.

■ The legislature has not placed a limitation on the time in which an habitual-offender proceeding must be brought. We previously have held that the statute of limitations for misdemeanors is not applicable to the habitual-offender proceeding. *State v. Perreault*, 113 N.H. 588, 311 A.2d 303 (1973); *State v. Bowles*, 113 N.H. 571, 311 A.2d 300 (1973); *see State v. Vashaw*, 113 N.H. 636, 638, 312 A.2d 692, 693 (1973).

The last conviction listed in the State's habitual-offender petition was dated November 18, 1977, and was for DWI, second offense. For this conviction, the defendant received a mandatory revocation of his license for three years. *See* RSA 265:82, I. For unrelated criminal convictions, the defendant was incarcerated in the State prison from May of 1978 to January of 1979 and from May of 1979 until April of 1981. In January of 1982, the State filed its habitual-offender petition, which resulted, in March of 1982, in the superior court's declaration.

An habitual-offender declaration brings with it a minimum mandatory four-year revocation of license. *See* RSA 262:22. The legislature has declared that the habitual-offender statute is intended "to impose *increased and added* deprivation of the privilege to drive motor vehicles . . . ." RSA 262:18, III (emphasis added). Consequently, if the State had elected to bring an habitual-offender petition shortly after the November 18, 1977, conviction, the defendant would have faced the loss of his driver's license for a minimum of seven years, making him eligible to drive, at the earliest, in late 1984. The defendant now faces an indictment for operating a motor vehicle after having been declared an habitual offender. The record before us does not disclose when the driving that resulted in the indictment took place, but obviously it was before late 1984.

The legislature has declared that it is the policy of the State:

"To deny the privilege of driving motor vehicles on such ways to persons who by their conduct and record have demonstrated their indifference for the safety and welfare of others and their disrespect for the laws of the state, the orders of her court and the statutorily required acts of her administrative agencies."

■ Considering the purpose of the habitual-offender statute and in light of the facts before us, we hold that the defendant's constitutional arguments are meritless. Accordingly, we answer questions 2 and 3 in the negative.

■ Question 6 reads: "Are two or more different charges arising out of the same conduct considered to be arising from the same transaction under R.S.A. 259:39?" We answer this question in the affirmative, based upon the plain meaning of the statute. However, on the facts before us there is a more than sufficient number of violations included in the habitual-offender petition to provide a basis for the court to declare the defendant an habitual offender. For example, the three convictions for DWI (on October 23, 1976, and August 18 and November 18, 1977) would alone be sufficient for an habitual-offender declaration. *See* RSA 259:39, I(d).

■ The remaining question reads: "9. Is there a presumption of invalidity in the habitual offender hearing when the offer of proof by the State as reflected in the record contradicts essential facts found in the Habitual Offender Petition; that is, the hearing transcript reflects reliance on seven (7) exhibits, and the dates of convictions of the State's exhibits as documented by the record do not correspond to the dates of convictions on the abstract accompanying the State's Petition?" We answer this question in the negative. Any conflict in evidence is a matter to be determined by the trier of fact. Disparate proof does not give rise to a legal presumption of invalidity.

Our decision today does not in any way dilute the inherent power of any court to correct errors, if such there be, concerning the court's jurisdiction over the party or the subject matter of the litigation. *See, e.g., Paragon Homes, Inc. v. Gagnon*, 110 N.H. 279, 266 A.2d 207 (1970); *see also Sununu v. Clamshell Alliance*, 122 N.H. 668, 448 A.2d 431 (1982) (setting aside default judgment). It should be noted that our holding in *State v. Cook*, 125 N.H. 452, 460, 481 A.2d 823, 829 (decided this day), calls attention to the fact that in appropriate circumstances, in the exercise of their discretion, trial

courts may appoint counsel to an indigent defendant in habitual-of-fender proceedings even though there is no constitutional requirement that such be done.

*Remanded.*

All concurred.