459 So.2d 44 (1984)
STATE of Louisiana, Appellee,
v.
Randy D. THARPE, Appellant.
No. 16243-KA, 16244-KW.
Court of Appeal of Louisiana, Second Circuit.
October 31, 1984.
Rehearing Denied November 29, 1984.
Writ Denied February 8, 1985.
*45 Norris & Placke by Allan L. Placke, West Monroe, for appellant.
William J. Guste, Jr., Atty. Gen., Baton Rouge, Johnny Parkerson, Dist. Atty., Robert S. Kennedy, Jr., Asst. Dist. Atty., Monroe, for appellee.
Before HALL, FRED W. JONES, Jr. and SEXTON, JJ.
SEXTON, Judge.
Randy D. Tharpe appeals his convictions and sentence for driving in violation of a habitual offender judgment and reckless driving. These two separate causes are herein consolidated in this appeal. We affirm.
The salient facts follow. Deputy Paul Benjamin testified that while he was on routine patrol in West Monroe, Louisiana, on April 5, 1983, between 8:00 and 11:00 p.m., he stopped in the parking lot of the Tango Lounge. The proprietor, Mr. Russel Crabtree, approached the deputy and asked him if he knew Ronnie Metcalf and Randy Tharpe. The deputy stated that he knew Metcalf but did not know Tharpe. Crabtree explained that he had had trouble with the pair earlier in the evening and did not want them to come back to his establishment. He described the vehicle in which Metcalf and Tharpe had left the lounge.
Later in the evening, the officer passed another lounge and saw the previously described vehicle parked outside. The deputy travelled down the highway a short distance, turned around and came back toward the parking area. As he did so, he observed the pickup truck leave the lot, squealing its tires and fishtailing slightly. The officer followed the truck and saw it run off the road approximately a foot onto the shoulder on two occasions. At this point, the officer pulled the truck over. The defendant was driving and Ronnie Metcalf was his passenger.
The defendant was unable to produce a valid driver's license but gave the officer an expired license. A check of the license number through the computer revealed that Tharpe had been adjudged a habitual offender and that his driver's license had been revoked. He was arrested for driving under revocation.
The defendant was subsequently charged in separate bills of information with a violation of LSA-R.S. 32:1480, the operation of a motor vehicle after having been determined to be a habitual motor vehicle offender, and with reckless driving in violation of LSA-R.S. 14:99. After the denial of motions to quash and suppress, and a subsequent guilty verdict on both offenses, the defendant appealed, asserting six assignments of error. The defendant was sentenced to one year in jail on the habitual offender charge and was sentenced to pay a fine of $100 and costs, or in default thereof, to serve thirty days on the reckless driving charge.

Assignments of Error Nos. 2 and 5
Assignment of Error No. 2 presents the threshold issue in this appeal. In this assignment the defendant complains of the denial of his motion to suppress all evidence in the case, asserting that the initial stop which led to his convictions was without probable cause.
*46 Assignment No. 5 is related in that the defense therein contends that under the analysis required by Jackson v. Virginia, 443 U.S. 307, 99 S.Ct. 2781, 61 L.Ed.2d 560 (1979), there was insufficient evidence to prove his guilt beyond a reasonable doubt of the offense of reckless driving.
As to Assignment No. 2, we have no doubt that the officers were justified in stopping this defendant. In this case the officer had a report of difficulty in a lounge caused by this defendant and another individual and had been given a description of their vehicle. Subsequently, the officer saw the described vehicle in the parking lot of another lounge. The officer observed this vehicle to fishtail and squeal its tires as it exited that parking lot. After the vehicle was observed to leave the roadway twice, the officer turned on his light and siren and stopped it, which lead to the defendant's arrest. Under these circumstances at least an investigatory stop, requiring something less than probable cause, but necessitating the officer to have an articulable knowledge of sufficient facts to reasonably suspect the detained person of criminal activity, was warranted. State v. Edsall, 385 So.2d 207 (La.1980). We thus find no merit to Assignment No. 2.
However, a more difficult question is presented with respect to Assignment No. 5 which questions the sufficiency of evidence used to determine the defendant's guilt on the charge of reckless operation. Of course, our standard is whether the evidence, when viewed in the light most favorable to the prosecution, is sufficient for the trier of fact to have found the defendant guilty beyond a reasonable doubt. Jackson v. Virginia, supra. Criminal negligence is an essential element of the crime of reckless operation. City of Shreveport v. Baylock, 107 So.2d 419 (La. 1958). Criminal negligence is conduct amounting to a gross deviation below the standard of care expected to be maintained by a reasonably careful person under like circumstances. LSA-R.S. 14:12.
As we noted, the previous complaint to the officer in this cause together with the defendant's action in fishtailing and driving off the road on two occasions was at least sufficient for an investigatory stop. The question here, then, is whether the spinning and accelerating of the tires together with the fishtailing upon the exit of the premises coupled with driving off the right side of the road on two occasions closely attenuated in time is sufficient evidence of criminal negligence to sustain this conviction.
In State ex rel. Palermo v. Hawsey, 377 So.2d 338 (La.1979), the Supreme Court held that the act of one "accelerating, spinning his tires" and "still accelerating" was insufficient evidence of careless and reckless driving to amount to probable cause to arrest for that offensethus sustaining a motion to suppress and reversing a defendant's conviction of possession of dangerous drugs which resulted from the stop. We find, however, that State ex rel. Palermo is of limited guidance. That opinion arguably assists the defendant here in that it found that the activity complained of in that case did not even amount to probable cause. On the other hand, it was rendered as a per curiam, was decided by a four to three margin, and apparently involved less deviant behavior than the case at bar.
All of the factors in this case considered, we are narrowly of the opinion that, when viewed in the light most favorable to the prosecution, the actions witnessed by the officer are sufficient to sustain this conviction.

Assignments of Error Nos. 1, 3, 4 and 6
All of these assignments deal with the issue of whether this defendant can properly be convicted of driving subsequent to a motor vehicle habitual offender judgment.
Assignment No. 1 contends that the trial court committed error in failing to sustain defendant's motion to quash which asserted the inadequacy of the predicate convictions used to adjudicate the defendant as a multiple offender.
*47 Assignment No. 3 complains of the failure of the trial court to allow evidence from the defendant during the trial itself of the inadequacy of the underlying convictions. It is obviously an effort to preserve appellant's position in this regard should an appellate court determine that a motion to quash is an inappropriate means to challenge the underlying convictions.
Assignment No. 4 complains that insufficient evidence was presented as a matter of law concerning the predicate convictions because they were unconstitutionally obtained.
Assignment No. 6 contends that because the underlying convictions are constitutionally infirm, defendant's sentence is therefore unconstitutional.
These assignments are all obviously interested and will be discussed jointly as they present the sole issue of whether the defendant may collaterally attack the predicate convictions underlying the motor vehicle habitual offender judgment which he was charged with violating.
The defendant's habitual offender judgment was rendered on March 31, 1982. The judgment prohibited the defendant from driving upon the roads, streets and highways of this state for a period of five years. The convictions upon which the judgment was based are: (1) DWI on March 22, 1979; (2) DWI, on May 22, 1979; and (3) DWI2nd offense and driving under revocation on January 7, 1982. He seeks to attack the January 7, 1982 convictions, complaining that he was effectively denied his right to counsel and was not properly Boykinized before his guilty pleas were accepted.
The issue of whether predicate convictions may be attacked after the violation of a habitual offender judgment is res nova in Louisiana.[1] In State v. Moore, 420 So.2d 1099 (La.1982), the Court granted writs to consider the issue but the matter was rendered moot upon the defendant's subsequent guilty plea without reservation of his right to appellate review. In State v. Woodard, 387 So.2d 1066 (La.1980), the Court declined to address the defendant's complaint that he was unrepresented by counsel at a previous guilty plea because the record did not factually support his claim.
The defendant was unrepresented by counsel at his January 7, 1982 conviction. The record reflects that the defendant asked for appointment of counsel but the trial court denied the request, considering it "tardy." Further, the State stipulated that the three right articulation rule of Boykin was not met when the challenged pleas were accepted. The issue, then, of whether a collateral attack on a predicate conviction may be made during proceedings for violation of a habitual offender judgment is properly framed and before this Court for decision.
The jurisprudence is that the defendant may not collaterally attack predicate convictions during the proceedings which lead to a habitual offender judgment. State v. Love, 312 So.2d 675 (La. App. 2d Cir.1975). The rationale supporting this decision is that the lack of constitutional safeguards do not completely invalidate an uncounseled misdemeanor conviction. Only the loss of liberty or imprisonment which results from the conviction is invalid; consequential civil disabilities are not. As the proceeding to declare a person a habitual offender is a civil proceeding by which defendant's liberty is not threatened, no attack on predicate offenses may be heard.
However, proceedings for violating the prohibition against driving after a habitual offender adjudication has been rendered are criminal in nature. State v. Bates, 391 So.2d 1164 (La.1980). Indeed, LSA-R.S. 32:1480 provides that any person found to be a habitual offender who is thereafter convicted of operating a motor vehicle in violation of that judgment shall *48 be punished by imprisonment for not less than one year nor more than five years.
In succinct terms, the defendant has suffered civil disability as a result of an unconstitutional conviction. Our jurisprudence, State v. Love, supra, finds no constitutional infirmity in such a procedure, holding that "only the loss of liberty or imprisonment resulting from the conviction is invalid." On the other hand, it has been held that such a conviction in derogation of a defendant's rights under Boykin may not be used as the basis for finding the defendant guilty as a second offender. For example, when the defendant is charged with driving while intoxicated, second offense. State v. Jones, 404 So.2d 1192 (La. 1981).
Our review of the genesis of the right to counsel in misdemeanor offenses, Argersinger v. Hamlin, 407 U.S. 25, 92 S.Ct. 2006, 32 L.Ed.2d 530 (1972), causes us to reject appellant's position here. In our view, the crux of that decision is contained in the following passage:
Under the rule we announce today, every judge will know when the trial of a misdemeanor starts that no imprisonment may be imposed, even though local law permits it, unless the accused is represented by counsel. He will have a measure of seriousness in gravity of the offense and therefore know when to name a lawyer to represent the accused before the trial starts.
The run of misdemeanors will not be affected by today's ruling. But in those that end up in the actual deprivation of a person's liberty, the accused will receive the benefit of "the guiding hand of counsel" so necessary when one's liberty is in jeopardy. Argersinger, supra, 92 S.Ct. at p. 2014.
This passage emphasizes that Argersinger affects only the case at hand when it is possible that the same proceeding could result in the deprivation of the person's liberty. In a prosecution for DWI-2nd, for example, the defendant's first offense conviction is an element of the offense of DWI-2nd and therefore must be proven by the state beyond a reasonable doubt. However, in the prosecution at hand, the defendant's status has been previously adjudged under a specific procedure established in our law. The offenses leading to that previous adjudication are not an element of the offense with which the defendant has been charged. We thus see a distinction between a situation where an improperly obtained conviction is one of the elements of the offense charged, and the circumstances of the instant case.
In this case, the predicate convictions are not an element of the state's proof. The defendant had been previously adjudged, because of a serious driving record, to have forfeited his privilege to operate a motor vehicle on the highways of this state. Thus, the question at issue in this cause is created by the defendant's unilateral determination to violate the previously imposed civil disability. We believe the nexus between the convictions complained of and appellant's ultimate imprisonment to have been broken by his unilateral determination that he was entitled to drive without a valid license. See Whorley v. Brillhart, 373 F.Supp. 83 (1974) for a similar federal holding.
Therefore, we hold that one found to be a habitual motor vehicle offender and subsequently charged under LSA-R.S. 32:1480, may not collaterally attack the predicate convictions leading to the habitual offender status in the criminal proceedings charging him with a violation of that status. For the above reasons, defendant's convictions and sentences for driving in violation of a habitual offender judgment and for reckless operation of a motor vehicle are affirmed.
AFFIRMED.
NOTES
[1] However, the Third Circuit has indicated in obiter dictum that a defendant may raise his constitutional rights as a defense to a further criminal proceeding under LSA-R.S. 32:1481. State v. Free, 321 So.2d 50 (La.App. 3rd Cir. 1975).