Strafford
Nos. 88-320
　　　88-368
　　　88-485

# THE STATE OF NEW HAMPSHIRE

### v.

# LEO GRONDIN

August 30, 1989

*John P. Arnold*, attorney general (*Robert E. Dunn, Jr.*, assistant attorney general, on the brief and orally), for the State.

*James E. Duggan*, appellate defender, of Concord, by brief and orally, for the defendant.

SOUTER, J. The Superior Court (*Nadeau*, J.) dismissed four indictments charging violations of a motor vehicle habitual offender order, thereby sustaining a collateral attack on the order based on constitutional deficiencies said to infect the convictions on which the order was predicated. In this consolidation of appeals by the State, we reverse.

During the twelve months ending in February, 1985, the defendant, Leo Grondin, was convicted three times in the Rochester District Court of operating a motor vehicle after suspension of his license, RSA 263:64, was convicted once of speeding, RSA 265:60, and once of driving an uninspected vehicle, RSA 266:5. As a consequence of his record, and following a hearing at which he was represented by counsel, the superior court found him to be a motor vehicle habitual offender as of February 27, 1985, RSA 262:21, IV, issued an order prohibiting him from operating a motor vehicle until such time as his license might be restored, RSA 262:24, and advised him that any violation of the order would subject him to imprisonment from one to five years, RSA 262:23. He did not appeal.

Although the record indicates that the defendant later admitted that he understood the order to be a revocation of his license under the habitual offender law, according to his same admission he operated a motor vehicle on a public highway on October 28, 1986, for which he was indicted, as he was for operating again on December 7, 1986. Following these two indictments he was indicted for unlawful operation on January 3, 1987, and was indicted a fourth time for operation on January 24, 1987.

In June, 1987, he moved the superior court to vacate the habitual offender order, alleging that the three underlying convictions for operating after suspension rested on guilty pleas that "were not made knowingly or intelligently," in that he entered the pleas "without benefit of counsel, and without ... knowing that he would be subject to a finding of an habitual offender as a result ...." The Trial Judge (*Nadeau*, J.) did not dwell on the adequacy of these claims to State constitutional infirmities, but denied the motion on the ground that there was no deficiency in the habitual offender proceeding, at which the defendant had been represented by

counsel, and which had resulted in an order personally served upon him.

The defendant then addressed the Rochester District Court with a motion to vacate the guilty pleas that had resulted in two of the three misdemeanor convictions underlying the habitual offender order. He did not notify the county attorney of this proceeding, and a police officer represented the State at the hearing, after which the Court (*Jones*, J.) granted the motion. The county attorney's subsequent attempt to enter the proceeding by motion for reconsideration was denied.

The district court did not indicate whether the defendant had appeared without counsel in the underlying prosecutions, but found that the forms on which the defendant had acknowledged his rights in those proceedings had not been signed by the district court judge and that the defendant "did not understand the acknowledgment of rights form when he signed the same." The record indicates that the defendant was subsequently retried on one of the charges, was found guilty, and appealed.

With the two convictions vacated, the defendant filed three motions in the superior court to dismiss the four pending indictments. The appellate record contains two of the motions, as well as transcripts of two hearings held on them, and the order of Nadeau, J., ruling on the first of them. No evidence was offered, and the superior court relied on the district court's order in assuming that the defendant had been denied constitutional rights, including the right to counsel, at the district court proceedings. The superior court relied on *Scott v. Illinois*, 440 U.S. 367 (1979), and *Baldasar v. Illinois*, 446 U.S. 222 (1985), in ruling that dismissal was required, having concluded that *State v. Cook*, 125 N.H. 452, 481 A.2d 823 (1984) was not in point, since it dealt with the predicate effect only of violation, as distinguished from misdemeanor, convictions. The superior court order did not refer to *Lewis v. United States*, 445 U.S. 55 (1980), as applied in *Cook*, or to *State v. Lemire*, 125 N.H. 461, 481 A.2d 820 (1984), decided immediately after *Cook*, which held that the defendant charged with violating an habitual-offender certification resting on misdemeanors as well as violations was not generally entitled to "attack his habitual-offender finding [collaterally], after having failed to appeal it." *Id.* at 462, 481 A.2d at 821.

In granting the motions to dismiss the four indictments, based on post-indictment findings that the convictions on which the habitual offender order rested were subject to constitutional infirmities, the trial court in effect sustained a collateral attack on

that order as a defense to an indictment charging its violation. Since *Lemire* held that a defendant was not entitled to collateral review in that circumstance, this appeal calls for us to examine the vitality and applicability of *Lemire*, which we follow in reversing the order under appeal.

We should say here that neither the defendants who mounted collateral attacks in *Cook* and *Lemire*, nor the defendant now before us, have claimed a statutory right to do so under the habitual offender law itself. Despite this implicit concession, we should pause long enough to indicate our agreement with the defendant's assumption that no such statutory right exists, lest we appear unduly ready to reach constitutional issues that might not require decision, *see New Hampshire Ins. Co. v. Duvall*, 115 N.H. 215, 218, 337 A.2d 533, 535 (1975); *Ashwander v. Tennessee Valley Authority*, 297 U.S. 288, 345–48 (1936) (Brandeis, J., concurring).

■ The text of the statute not only fails to provide expressly for any collateral review of an order at the behest of a defendant indicted for its violation, but indicates the legislature's intent to afford no such review. It is instructive to note that RSA 262:19, I (Supp. 1988) (for text in force in 1985, identical in relevant respects, *see* Laws 1983, 373:2) provides that the abstract of the record of any person sought to be certified as an habitual offender shall be *prima facie* evidence that the individual was "duly" convicted of the offenses listed, thus indicating that the validity of a predicate conviction may be an issue for consideration in the proceeding held to determine whether a named respondent is an habitual offender. *See State v. Buckwold*, 122 N.H. 111, 112, 441 A.2d 1165, 1166 (1982).

By way of contrast, however, the provisions penalizing operation on the highway by someone so certified and enjoined from driving contain no indication that anything but the facts of certification, prohibition and violation are relevant. Thus, it is unlawful for one declared to be an habitual offender to drive on a highway "while an order ... prohibiting such driving remains in effect." RSA 262:23, I (Supp. 1988) (for text in force in 1985, similar in relevant respects, *see* Laws 1981, 543:8). If anyone "found" to be an habitual offender is convicted of violating the prohibitory order, a specified minimum sentence is mandatory. *Id.* The quoted language contains no suggestion that the validity of an order once issued might be questioned after indictment by reexamining the convictions on which it was predicated, and no indication that a court trying an indictment for violating an order should look behind the order to the predicate convictions. The validity of those convictions was,

then, apparently, meant to be open to examination before being considered in support of an habitual offender order, but not for the purpose of nullifying such an order claimed to have been violated.

In the absence of any statutory authorization for collateral review at the behest of a defendant charged with its violation, the constitutional vulnerability of an order to such a collateral attack was addressed in a sequence of two opinions of even date with each other. *State v. Cook*, 125 N.H. 452, 481 A.2d 823, held, *inter alia*, that neither the specific guarantee of counsel nor the general guarantee of due process contained in part I, article 15 of the Constitution of New Hampshire forbad the use of uncounselled violation convictions as predicates for an habitual offender order. *Cook* found *Lewis v. United States*, 445 U.S. 55, in point, and *Baldasar v. Illinois*, 446 U.S. 222, inapposite, in reaching the same result under the sixth and fourteenth amendments of the National Constitution. In the companion case of *State v. Lemire*, 125 N.H. 461, 481 A.2d 820, we held, *inter alia*, that an habitual offender order resting on misdemeanor as well as violation convictions was not generally subject to collateral attack, although we recognized "the inherent power of any court to correct errors, if such there be, concerning the court's jurisdiction over the party or the subject matter of the litigation." *Id.* at 464, 481 A.2d at 823 (citing *Paragon Homes Inc. v. Gagnon*, 110 N.H. 279, 266 A.2d 207 (1970); *Sununu v. Clamshell Alliance*, 122 N.H. 668, 448 A.2d 431 (1982) (setting aside default judgment)).

The defendant seeks to rely on this latter element of the *Lemire* opinion, by arguing that the superior court's consideration of the collateral attack on the habitual offender order in this case was nothing more than the exercise of its inherent power to correct jurisdictional errors. In so arguing, the defendant alludes to the extended sense of "jurisdiction" that has been the vehicle for enlarging the scope of habeas corpus review to include consideration of constitutional defects affecting a commitment order, on the theory that such error deprived the committing authority of jurisdiction it would otherwise have had. *See Bonser v. Courtney*, 124 N.H. 796, 807–08, 481 A.2d 524, 530 (1984). The argument thus assumes that the superior court was correcting a jurisdictional error affecting the habitual offender order when it sustained a collateral attack on that order based on constitutional defects in the criminal proceedings on which the order was based.

There are two answers to this argument, however. First, if the defendant were reading *Lemire* correctly, the court would virtually have been extending with one hand the same right of collateral

review it had just barred with the other. If any constitutional claim arising from a predicate conviction could be treated as raising a jurisdictional attack on the habitual offender order, there would be nothing left of the general rule that an order is immune to collateral attack by a defendant charged with its violation. It is, on the contrary, apparent from *Lemire's* citations to cases dealing with jurisdictional defects that the court was speaking of jurisdiction in at least one of its core senses, not in the extended sense illustrated in *Bonser v. Courtney.*

Second, but not less significantly, even the analogy with habeas practice that the defendant espouses would dispositively cut against his position. Among the cases cited by the defendant, *Bonser v. Courtney supra* is most closely in point. Although we referred there to the view described above, that "the jurisdiction of a court can be 'lost' when constitutional rights of the [habeas] plaintiff have been violated," 124 N.H. at 807, 481 A.2d at 530, we recognized such a result only when the violation occurred "in the underlying proceeding which resulted in the commitment." *Id.* We specifically reaffirmed the position reached in earlier cases, that "in our review of a civil contempt proceeding we would not consider the underlying action out of which the contempt order arose," *id.* at 810, 481 A.2d at 532 (citations omitted), a position effectively reaffirmed most recently in *Town of Nottingham v. Bonser,* 131 N.H. 120, 552 A.2d 58 (1988), *cert. denied,* 109 S. Ct. 3163 (1989), where we again refused to permit a collateral attack on a finding of contempt based on a constitutional deficiency claimed to have infected the underlying injunction that the defendant had defied. *Id.* at 136, 552 A.2d at 68.

The defendant before us stands in the same relation to the habitual offender order as the plaintiff in *Bonser v. Courtney* stood to the underlying injunction. In each case an order resulting from a civil proceeding was, or is alleged to have been, violated. Since the habeas plaintiff cannot attack the contempt finding and commitment order for constitutional defects in the underlying injunction, habeas practice furnishes no basis to claim that the habitual offender indicted for violating the injunction against operating a motor vehicle should be allowed to attack the habitual-offender order underlying his indictment.

Implicit, of course, in the habeas rule limiting collateral review is a rejection of the view that any constitutional error or taint at any stage of a legal odyssey culminating in commitment for violating a civil order necessarily infects the ultimate order of commitment. Analogous habeas doctrine, that is, rejects the

position that we rejected in *Cook*, that commitment for violating a civil order resting on uncounselled convictions is thus itself uncounselled for purposes of applying part I, article 15 of the State Constitution. *See Cook*, 125 N.H. at 455, 481 A.2d at 825–26. While the formal basis for rejecting that theory of causation is the ascription of a separate and independent character to the civil injunction or habitual offender proceeding resulting in the order personally directed to the defendant, the reasons for treating such a proceeding as sufficiently independent to break the chain of causation are worth recollecting here.

The general underlying premise is that a person subject to an injunctive order issued by a tribunal with the requisite personal and subject matter jurisdiction should be bound to pursue any objection to the order through the constituted judicial process available for that purpose. Such an individual has the means to press any meritorious claim of right without first acting in violation of a presumptively valid ruling that ostensibly binds him. As a consequence, a court trying a charge of such a violation is justified in refusing to entertain a defense in the form of a collateral attack on the order, the subject of which could have been raised and litigated through the judicial process prior to the violation charged. Thus, it is in point for the State to urge our adoption of Justice Stewart's summary of these considerations, that

> "in the fair administration of justice no man can be a judge in his own case .... [R]espect for judicial process is a small price to pay for the civilizing hand of law, which alone can give abiding meaning to constitutional freedom."

*Walker v. Birmingham*, 388 U.S. 307, 320–21 (1967).

 The pertinence of this general rule to the motor vehicle habitual offender is clear. At the original hearing in an habitual offender proceeding, a defendant is free to attack the constitutional validity of any previous motor vehicle conviction the State seeks to use in proving that the defendant is an habitual offender, *State v. Buckwold*, 122 N.H. at 112, 441 A.2d at 1166. If found to be an habitual offender, the defendant then has the right of any civil litigant to appeal the order issued against him. At the time the instant order was issued by the superior court, appeal lay to this court under RSA 262:25, and under amendments to the habitual offender law subsequently adopted, appeal from an administrative habitual offender order, *see* RSA 262:19 (Supp. 1988), will lie to the superior court, *see* RSA 262:25 (Supp. 1988), whose own order is

subject to review here in the normal course. *See State v. Canney,* 132 N.H. 189, 562 A.2d 1315 (1989).

In sum, such a defendant has two opportunities to attack the validity of an underlying conviction, once by appeal of the conviction itself and once by collateral attack in the habitual offender proceeding. (Whether a defendant may have even a third opportunity, by petitioning to vacate an habitual offender order prior to any alleged violation of it, is an issue yet to be decided.) If these challenges fail in the trial forums, a defendant is entitled to full appellate review in this court. In applying the State Constitution, therefore, we continue to adhere to the general position stated in *Lemire* that collateral attack on an habitual offender order is not open to a defendant charged with its violation. *Accord State v. St. Hilaire,* 543 A.2d 824 (Me. 1988) (vacation of habitual offender order after its violation no defense); *State v. Higgins,* 338 A.2d 159 (Me. 1975) (collateral attack on license suspension order not permitted as defense to charge of violation); *State v. Tharpe,* 459 So. 2d 44, 47–48 (La. Ct. App. 1984), *cert. denied,* 463 So. 2d 600 (La. 1985); *Smith v. State,* 248 Ga. 828, 831, 286 S.E.2d 709, 712 (1982).

Although we have never held that such opportunities for prior challenge would be adequate to bar later collateral attack if a defendant lacked counsel at both the underlying criminal prosecution and the habitual offender proceeding, no such issue arises in this case, where the defendant admittedly had representation at the habitual offender hearing. And although the defendant seeks to counter the significance of his counselled status by noting his lawyer's failure to challenge any of the underlying convictions, that is neither a matter of record nor, assuming its truth, an indication of incompetence tantamount to uncounselled status. For all we can tell, the defendant's counsel at the habitual offender proceeding may have had reason to believe that the defendant was represented by counsel in the underlying prosecutions. (On this record, indeed, we can not say such a belief would even have been erroneous; there is no finding that the defendant was uncounselled.) And we have no indication of what he may or may not have told his counsel about his understanding of his waivers of rights in the underlying prosecutions.

Nor do we believe that the defendant espouses a tenable position in arguing that *Lemire's* general preclusion of collateral attack must be subject to exception in this case on federal grounds. Although the superior court assumed that the defendant had been denied a series of constitutional rights in the underlying prosecu-

tions, the court singled out the right to counsel, and it is solely on the assumption of his uncounselled status in those prosecutions that the defendant here argues that the sixth and fourteenth amendments require an opportunity for collateral attack. It will be recalled that the superior court accepted this position on the strength of *Baldasar v. Illinois*, 446 U.S. 222, whereas in *State v. Cook*, 125 N.H. at 458, 481 A.2d at 828, we explained our understanding that the amenability of an habitual offender order to collateral attack under the sixth amendment is governed by *Lewis v. United States*, 445 U.S. 55, a position that we see no reason to repudiate.

The defendant in *Lewis* challenged his indictment and conviction under 18 U.S.C. App. § 1202(a)(1), which prohibited possession of a firearm by a convicted felon, claiming that the predicate State felony conviction was invalid under the fifth and sixth amendments due to the defendant's uncounselled status in the underlying felony. The Court rejected both challenges, reasoning that Congress could rationally conclude that any felony conviction, even one allegedly invalid, was an adequate basis to prohibit possession of a firearm by a convict who had been entitled to challenge the prior conviction or otherwise remove the disability before buying a firearm, *Lewis*, 445 U.S. at 66–67. It distinguished sixth amendment cases in the line of *Burgett v. Texas*, 389 U.S. 109 (1967), as having been concerned with the reliability of the prior predicate conviction, whereas the Court understood the concern under 18 U.S.C. App. § 1202(a)(1) to be solely with the fact of conviction as a rational basis for the prohibition.

As we observed in *Cook*, 125 N.H. at 458, 481 A.2d at 828, the enforcement of an habitual offender order presents an even more striking case for the application of the *Lewis* rationale than did the facts of *Lewis* itself. In each case the legislative object is to withdraw the opportunity for using a potentially dangerous instrumentality from a class of individuals identified by records of prior offenses indicating that in their hands the instrumentalities would in fact be extraordinarily dangerous to others. In each case the prohibition extends only to class members clearly and unequivocally identified by reference to a prior judicial record; there is otherwise no comparable, independent prohibition either of possessing a firearm or operating a motor vehicle on a highway. In each case, a member of the class identified by reference to prior convictions has had an opportunity to litigate the charge resulting in conviction and to appeal that result, and has either failed to do so or has done so unsuccessfully. In the case of the habitual

offender, moreover, the member of the class has been identified as such only after the conclusion of a separate proceeding that is itself subject to appeal, and in which the predicate convictions may be attacked collaterally. The conditions, therefore, that justify criminal enforcement of 18 U.S.C. App. § 1202(a)(1) without regard to the uncounselled character of a predicate conviction also justify criminal enforcement of an habitual offender order against a defendant accused of its violation, without further opportunity to attack the order collaterally through constitutional challenge to a predicate conviction.

Although the defendant seeks to avoid this result by arguing that *United States v. Mendoza-Lopez*, 107 S. Ct. 2148 (1987), requires a narrow reading of *Lewis*, the argument does not avail him. *Mendoza-Lopez* illustrates the importance of *Lewis*'s caveat that if members of a class subject to a special prohibition are to be denied the opportunity for collaterally attacking an indictment for violating that prohibition, they must have had some prior opportunity to litigate their inclusion in the class, either by challenging the validity of a predicate offense or by removing the disability that follows from it. *See Lewis*, 445 U.S. at 67. In *Mendoza-Lopez*, the predicate for the defendant's indictment as an illegal alien previously deported was a deportation order. This order had been issued after an administrative proceeding at which the defendant, without counsel, was not effectively advised of his rights to seek suspension or appeal of the order, which rights he did not adequately waive prior to his deportation beyond the jurisdiction. The Court held that those defects in the administrative proceeding effectively precluded the judicial review that must be available before the government may rely on an administrative order to seek a later criminal sanction. *Mendoza-Lopez*, 107 S. Ct. at 2154–55.

The present defendant invokes *Mendoza-Lopez* to argue that his allegedly uncounselled status in the underlying prosecutions denied him the opportunities to litigate and appeal at that earlier stage, and that the failure of his counsel at the habitual offender hearing to challenge the predicate convictions effectively denied him the opportunity to challenge those convictions at that later stage. The tacit assumption is that failure of counsel to raise a possible issue is equivalent to the absence of counsel and that an absence of counsel is equivalent to lack of opportunity for judicial review.

The argument proves too much, however. If the failure of counsel at the habitual offender hearing to challenge a predicate conviction were tantamount to a denial of the opportunity to challenge it, then

a predicate conviction could always be challenged for the first time by collateral attack on an indictment for violating the habitual offender order (or for violating 18 U.S.C. App. § 1202(a)(1)), and the scope of *Lewis* would boil down to virtually nothing. It must be remembered that *Lewis* assumed that the defendant's State felony conviction had been obtained in violation of his right to counsel, a fact that was not treated as equivalent to the denial of his prior opportunity to challenge that predicate conviction. Similarly, it was not the uncounselled status of the *Mendoza-Lopez* defendant that effectively removed the opportunity for judicial review and displaced the general rule of *Lewis*, but the failure to inform him of rights to obtain judicial review and delay in the enforcement of his deportation order.

Something more, therefore, than a failure to provide counsel at the prior point at which class membership is determined is necessary to amount to a denial of the opportunity to challenge the predicate conviction as required by *Lewis*, or to challenge the administrative order through judicial review, as required by *Mendoza-Lopez*. It follows that something more than the mere fact that counsel did not challenge a predicate conviction must be necessary to displace *Lewis's* rule here.

When the record indicates one or more apparent opportunities, not only to litigate the predicate offense in a judicial forum but to review the ensuing conviction directly and collaterally, the burden must rest on the defendant to demonstrate why such opportunities were effectively worthless. This the defendant has failed to do. As we previously indicated, the record reveals nothing about what the defendant specifically did and did not understand when he entered guilty pleas to the complaints charging the predicate offenses. It indicates nothing about his understanding at the time of the habitual offender proceeding, and nothing about the reasons for his counsel's decision to raise no challenge to the predicate convictions at that time. We simply know that a defendant with counsel at the habitual offender proceeding did not challenge those convictions, a fact that is not equivalent to a denial of the opportunity for challenge to which *Lewis* referred. The defendant is seeking to raise a constitutional challenge based on favorable speculation.

█ Because the dismissal motions failed to allege facts that might arguably remove their collateral challenges from the general rules established by *Lemire* and *Lewis*, the motions should have been denied. And because the record contains no findings or evidentiary bases for arguably displacing *Lemire* and *Lewis*, the

judgments dismissing the indictments are reversed, and the cases are remanded for trial on the indictments.

*Reversed.*

JOHNSON, J., did not sit; the others concurred.