Strafford
No. 83-076

RANDY WHITE *& a.*

v.

JUDITH LEE, BARRINGTON TAX COLLECTOR, *& a.*

October 21, 1983

*New Hampshire Legal Assistance,* of Portsmouth (*Fay E. Melendy* on the brief and orally), for the plaintiffs.

*McNeill & Taylor P.A.,* of Dover (*R. Peter Taylor* on the brief and orally), for the defendants.

*Gregory H. Smith,* attorney general (*Betsy S. Westgate,* assistant attorney general, on the brief), by brief for the State of New Hampshire, as amicus curiae.

.KING, C.J. This is an interlocutory transfer without ruling from the Superior Court (*Temple*, J.). In this case, we are asked to rule upon the sufficiency and constitutionality of the notice provisions of RSA chapter 80 as they apply to a current owner whose property is subject to a tax sale for delinquent taxes which were assessed against a prior owner.

The facts from which this case arose are as follows: On August 29, 1977, the plaintiffs, Randy and Katherine White, became landowners for the first time when Katherine's great-grandmother, Pearl Chesley, conveyed to them for no consideration a two-acre, unimproved parcel of land located on Wood Road in Barrington, New Hampshire. In November 1977, following the transfer, the tax collector for the town of Barrington, defendant Judith Lee, mailed to Pearl Chesley a bill for the real estate taxes on the property in the amount of $24.72. In the town of Barrington, real estate tax bills are routinely sent out in November of each year to the owner of record as of April first of that tax year.

In May 1978, because the 1977 taxes on the property remained unpaid, the tax collector mailed to Pearl Chesley a notice informing her that a tax sale of the property would be held in June 1978, should the delinquent taxes on her property then remain unpaid. No notice of the impending sale was mailed to the then current owners, plaintiffs Randy and Katherine White, even though they were listed as the owners of the property on the town's current tax warrants. Pearl Chesley died in May 1978 without informing the plaintiffs of the impending sale of their property.

A tax sale of the plaintiffs' property was held on June 5, 1978. Elaine Gorrill, also named as a defendant in this suit, purchased the property from the town for $33.89. Notice of the sale was recorded at the registry of deeds; however, no notice was forwarded to the plaintiffs.

Because the plaintiffs moved several times during 1978 and 1979, they did not receive their 1978 tax bill and, through error and inadvertence, that bill was not paid.

On May 8, 1980, the plaintiffs received notice that their 1979 taxes in the amount of $33.05 must be paid prior to June 7, 1980, in order to avoid a tax sale of their property for nonpayment of these taxes. The plaintiffs did not, however, receive any notice regarding the delinquent 1977 taxes, nor were they informed that the continuing delinquency meant that their property was in jeopardy and that their right to redeem could expire on June 5, 1980.

On June 12, 1980, the plaintiffs mailed a check in the amount of $33.05 to the Barrington Tax Collector. Approximately two months after it had been received, the tax collector returned the uncashed

check to the plaintiffs with a letter dated August 5, 1980, informing them that their property had been deeded to Elaine Gorrill. It was at this point that the plaintiffs first became aware of the fact that their property had been subject to a tax sale for delinquent taxes.

The plaintiffs later discovered that on July 17, 1980, more than one month after they had paid $33.05 into the town treasury, the tax collector had executed a tax deed of their property to Elaine Gorrill. RSA 80:38 (Supp. 1981). The defendant Gorrill had purchased the land at a tax sale held by the town on June 5, 1978, for non-payment of the 1977 taxes on the property.

The plaintiffs filed a class action in the Strafford County Superior Court seeking injunctive and declaratory relief for themselves, and for all others similarly situated who have failed to pay their taxes and whose real estate has therefore been subject to the tax sale procedures of RSA chapter 80. The plaintiffs seek to have the tax sale of their property set aside on the basis of insufficient notice and to enjoin any further employment of the tax sale procedures as set forth in RSA chapter 80.

The plaintiffs contend that RSA chapter 80 should be interpreted to require that all notices of tax liability and tax sale proceedings be given to a *current* owner of property, when a town is on notice of a change in ownership since the date of the original tax assessment. The plaintiffs further contend that if the statute is *not* so interpreted, it is invalid on constitutional grounds because it allows a property owner who acquires his property in the middle of a tax year to lose title to it without being provided either with notice of the tax liability, the tax arrearage, the tax sale, and redemptive rights, or with an opportunity for a hearing to determine the propriety of a transfer by tax deed.

Because the questions raised in this litigation are important and novel issues in New Hampshire, and will have an impact on the procedures used by any municipality in conducting a tax sale pursuant to RSA chapter 80, the Superior Court (*Temple*, J.), upon recommendation of a Master (*Robert A. Carignan*, Esq.), transferred four questions without ruling to this court.

The first question transferred is as follows:

> "1. Does RSA 80:21 require a town to notify the current owner of a parcel of real property of a tax sale where delinquent real estate taxes were assessed against a prior owner, and, as a result of a change in ownership during the tax year, the current owner was listed on subsequent tax warrants?"

RSA 80:21 requires that a tax collector, upon posting public notice

of a tax sale, also provide notice "by registered mail to the last known post-office address of the owner *or* of the person against whom the tax was assessed." In *Coleman v. Town of Hooksett,* 111 N.H. 337, 283 A.2d 681 (1971), this court noted that the purposes of the tax sale notices required by RSA 80:21 are "(1) *to inform the owner that his property is to be sold so that he can prevent the sale by paying the taxes,* and (2) to advise prospective purchasers that the taxpayer's property is to be offered for sale." *Id.* at 338, 283 A.2d at 682 (emphasis added).

■■ It is an accepted principle of statutory construction that statutes "should be construed so as to effectuate their evident purpose." *State v. Sweeney,* 90 N.H. 127, 128, 5 A.2d 41, 41 (1939). In order to achieve the purpose behind the notice mandates of RSA 80:21, this provision must be interpreted to require that notice be sent to those individuals most interested in retaining the property and, therefore, most willing to pay the delinquent taxes.

■ The current owners, as listed upon the town's tax warrants, are interested parties to an impending tax sale of their property. They stand to lose valuable rights if their property is sold, and they are, therefore, the parties who should be most willing, if given notice, to pay the delinquent taxes upon the property and thereby avoid a sale. In order to read RSA 80:21 in harmony with its purpose within the statutory scheme, it must be interpreted to require that notice of an impending sale be sent to a current owner, when that individual's name and address are listed upon the town's current tax warrant.

■■ Only when RSA 80:21 is interpreted to require this form of notice will it withstand constitutional challenge. In a recent decision, *Mennonite Bd. of Missions v. Adams,* 103 S. Ct. 2706 (1983), the United States Supreme Court established the right of a mortgagee of property to receive notice of an impending tax sale of the mortgaged property. Examining tax sale procedures in general, the Court held that "notice by mail or other means as certain to ensure *actual notice* is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party," if that party's name and address are reasonably ascertainable. *Id.* at 2712 (emphasis added). The Court applied the due process mandates, expounded in *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 314 (1950), to tax sale proceedings. *Mennonite Bd. of Missions v. Adams,* 103 S. Ct. at 2709–11. The Court further noted that "a party's ability to take steps to safeguard its own interests does not relieve the State of its constitutional obligations." *Id.* at 2712.

██ ██ The current owners of a piece of property which is subject to an impending tax sale are interested parties whose property interests will be adversely affected by such a sale. Consequently, these individuals, whose names and addresses are reasonably ascertainable from the town's tax warrants and/or current property inventories, must be given actual notice by registered mail of an impending sale. *See* RSA 74:7-a (Supp. 1981) (penalty for failure to file completed inventory on or before April 15). Less reliable forms of constructive notice, such as publication or posting, are not reasonable where "an inexpensive and efficient mechanism such as mail service is available." *Mennonite Bd. of Missions v. Adams,* 103 S. Ct. at 2711 (quoting *Greene v. Lindsey,* 456 U.S. 444, 455 (1982)). The fact that the current owners may realize that their property is subject to an annual tax, and may be able to inquire for themselves into the tax status of their property, does not relieve the State of its constitutional obligation to provide notice. *Mennonite Bd. of Missions v. Adams,* 103 S. Ct. at 2712.

We have chosen to address simultaneously questions two and three transferred by the superior court.

> "2. Does RSA require one or more of the following notices be provided to the current owner: a. notice of the tax liability; b. notice of the tax arrearage; c. notice of completion of tax sale; d. notice and explanation of redemption rights; e. notice of intent to transfer by tax deed; f. notice and opportunity for a hearing prior to transfer by tax deed?
>
> 3. If chapter 80 is not interpreted to require any or all of the notices outlined in questions 1 and 2, does RSA chapter 80 violate: A. the Due Process Clause of Part 1, Article 15 of the New Hampshire Constitution; B. the Due Process Clause of the Fourteenth Amendment of the United States Constitution; C. the Civil Rights Act, 42 U.S.C. § 1983?"

 A tax sale proceeding is one in which an individual may be deprived of significant property rights; therefore, such a proceeding must measure up to the standards of due process. *See Board of Regents v. Roth,* 408 U.S. 564, 571–72 (1972) (property interests protected by the due process clause extend to the ownership of real estate and beyond); *Gagne v. Morton,* 102 N.H. 114, 116, 151 A.2d 588, 589 (1959) (one cannot be deprived of his real property without due process of law). The due process clauses of the United States and new Hampshire Constitutions mandate that, *prior to any proceeding that will be accorded finality,* the State must provide "notice reason-

ably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Tr. Co.*, 339 U.S. at 314; *Town of Bethlehem v. Tucker*, 119 N.H. 927, 929, 409 A.2d 1334, 1335 (1979). Due process does not require that an owner of newly-acquired property be given *actual* notice at each stage of a town's tax collection proceedings.

■■■ "It has long been the law in this state that the power and authority of a tax collector to sell land for unpaid taxes is exclusively statutory." *Dowd v. Gagnon*, 104 N.H. 360, 361, 187 A.2d 63, 64 (1962). A valid tax deed can only be given when a tax collector strictly complies with all of the mandates of the current tax sale statute. *Id.* RSA chapter 80 sets forth the statutory scheme for property tax sales in New Hampshire. We will examine, in order, the various steps required to effectuate a valid tax sale and the sufficiency of the notice requirements accompanying each step as they apply to an individual who acquires property in the "middle" of a tax year.

RSA 72:6 imposes a general property tax upon all real estate, whether improved or unimproved. Assessment of the tax is performed annually by each city and town, based upon their property inventory as of April 1. RSA 76:2 (Supp. 1981). A list of the taxes assessed to each property owner is thereupon forwarded by the town to the tax collector, who is required to send a bill, by first class mail, to every owner to be taxed. RSA 76:11 (Supp. 1981). Property tax bills are customarily mailed out in the fall of each tax year to the property owner of record as of April 1. *Cf.* RSA 76:15-a (provision allowing for semi-annual collection of taxes in certain towns and cities).

■ There is no statutory provision nor due process mandate which requires a tax collector to mail a copy of the tax bill to the current owner of a given piece of property. The burden of having to monitor all transfers at the registry of deeds, between April 1, the first day of the new tax year, and the date upon which the tax bills are mailed out, is too great a burden to place upon a municipality. These individuals, whose names and addresses will become readily available to the town upon the subsequent year's inventories, will receive sufficient notice, as mandated by statute, prior to any action by the town which might adversely affect their interest in the property. *See* RSA 80:21 (notice of impending sale); Laws 1983, 135:3 (to be codified at RSA 80:38-a) (notice to current owner of intent to transfer tax deed).

■■■ A tax collector has the power under RSA 80:20 to sell any piece of property in order to recover the outstanding taxes due on that property. The current owners of a piece of property, however, must be given *actual* notice prior to any tax sale of their property, if their names and addresses are reasonably ascertainable. RSA 80:21; *Mennonite Bd. of Missions v. Adams*, 103 S. Ct. at 2712. The purpose of this notice, which is typically sent out in May, subsequent to the close of the tax year for which the taxes remain outstanding, is to inform the owners of the tax arrearage and the payments which must be made in order to avoid a tax sale. No additional notice to the owners is required, however, following the completion of the sale. *See* RSA 80:27.

After a tax sale, property so sold may be redeemed by payment to the tax collector, before a deed is given to the purchaser, of the purchase price plus costs and interest. RSA 80:32 (Supp. 1981). Partial payments in redemption are permissible, RSA 80:33-a; however, complete redemption must be made before the tax collector issues a tax deed to the purchaser, which may occur two years after the date of the tax sale. RSA 80:38 (Supp. 1981).

■■■ In order to ensure due process, and to protect an owner who purchases his property *after* a tax sale has occurred from losing his rights without sufficient notice, we will, after the date of this opinion, require that all current tax bills include notice of past arrearages and tax sales. Each current tax bill should reflect the amount of payment necessary in order to redeem the property from a prior tax sale, as well as the date upon which these redemption rights will ultimately be foreclosed. This notice requirement will protect the rights of new owners, while serving as a reminder to others of the existence of their redemption rights.

The final step, in a tax sale proceeding, is the ultimate transfer of a tax deed for the underlying property to the tax sale purchaser. The legislature has recently amended RSA chapter 80 to provide that "at least 30 days prior to executing the deed under RSA 80:38, the tax collector shall notify the current owner of the property, or his representative or executor, by certified mail, return receipt requested, of the impending deeding." Laws 1983, 135:3 (to be codified at RSA 80:38-a). This amendment requires a town to provide a current owner of property with notice at the most critical stage of a tax sale proceeding, the point at which his redemption rights may be permanently foreclosed. An owner is given one final opportunity to pay the delinquent taxes on his property and thereby redeem the property prior to an ultimate foreclosure of his rights.

■■■ A statute will not be construed to be unconstitutional,

where it is susceptible to a construction rendering it constitutional. *Jarvais v. Claremont*, 83 N.H. 176, 180, 139 A. 747, 749 (1927); *Canaan v. District*, 74 N.H. 517, 529–30, 70 A. 250, 254 (1908). We conclude that RSA chapter 80, when read in conjunction with the notice requirements mandated herein, is not unconstitutional. The statutory scheme, as interpreted by this court, contains sufficient safeguards to insure that a current owner of property will be notified sufficiently in advance of any tax sale proceeding which may adversely and conclusively affect his rights, so as to afford him the opportunity to present his objections. Accordingly, we hold that the provisions of RSA chapter 80 do not violate 42 U.S.C. § 1983 or the due process mandates of either the Federal or New Hampshire Constitutions.

> "4. Does Part 1, Article 1 of the New Hampshire Constitution require the Barrington Tax Collector, upon receipt of a tax payment from the plaintiffs, to notify them of the remaining tax delinquency and afford them notice of and opportunity for redemption despite passage of two years from the tax sale as provided in RSA 80:32 where no tax deed has been issued pursuant to RSA 80:38?"

Based upon our resolution of the issues presented in questions one, two, and three, we find that it is unnecessary for us to reach or address the constitutional issue posed to this court in question four. We remand this case to the superior court for further proceedings in accordance with this opinion.

*Remanded.*

SOUTER, J., did not sit; the others concurred.