Claremont District Court
No. 83-206
Cheshire
No. 84-123

CITY OF CLAREMONT

v.

ELROY TRUELL & a.

TOWN OF WALPOLE

v.

JOHN AND KATHLEEN FOSTER

February 7, 1985

32

*Elliott, Jasper & Bennett,* of Newport (*Louie C. Elliott, Jr.,* on the brief and orally), for the City of Claremont.

*Law Office of Michael J. Work,* of Newport (*Peter Y. Wolfe* on the brief and orally), for Elroy and Doris Truell.

*Bradley, Talbot & Burnett,* of Keene (*Homer S. Bradley* on the brief and orally), for the Town of Walpole.

*Cristiano, Kromphold, Green, McMahon and Heed,* of Keene (*Peter W. Heed* and *Charles A. Donahue* on the brief, and *Mr. Donahue* orally), for John and Kathleen Foster.

DOUGLAS, J. These are two separate, but consolidated, cases involving issues of liability for child placement costs. The defendants in No. 83-206, Elroy and Doris Truell, appeal an order of the Claremont District Court holding them liable for the expenses incurred in the placement of their child pursuant to RSA chapter 169-D (Supp. 1983). The Fosters, defendants in No. 84-123, appeal an order of the superior court permitting the Town of Walpole to place a real estate lien on their home pursuant to RSA 165:28 to secure reimbursement for expenses incurred under RSA chapter 169-D (Supp. 1983).

I. *Truell*

On September 3, 1981, defendant Doris Truell sought the help of the New Hampshire Division of Welfare in dealing with her stepdaughter, who is the daughter of defendant Elroy Truell. An employee of the division advised her to petition the Claremont District Court to declare the girl to be a child in need of services (CHINS) under RSA chapter 169-D (Supp. 1983). On September 4, 1981, Mrs. Truell filed the petition, and on September 8, 1981, the girl was adjudicated a child in need of services. *See* RSA 169-D:14 (Supp. 1983).

On September 29, 1982, a dispositional hearing was held, *see* RSA 169-D:17 (Supp. 1983), and the Court (*Burling*, J.) ordered placement of the child. Although it was not then a party to the proceeding, the plaintiff, City of Claremont, was found to be the legally liable unit under former RSA 169-D:29 (Supp. 1981) (current version at RSA 169-D:29 (Supp. 1983)), and pursuant to that same provision was liable for all the expenses incurred in the disposition. The court further determined that the defendants could afford to contribute $25.00 per week to the costs of the child's placement, and they were ordered to pay that amount. After the September 29 disposition, additional placements were made under the original petition.

The defendants interpreted the court's order to mean that they were to pay $25.00 per week *only while* the child was receiving services. The city, however, interpreted the order to mean that the defendants were to pay $25.00 per week *until* the city had been *reimbursed* for the total amount of its expenditures.

Consequently, the city filed a motion for clarification of the court's order. A hearing was held, and the court rendered a decision stating that it was its intention to order the payment of $25.00 per week only while the child was actually placed. The court informed the city that if it felt the court lacked the authority to determine the total liability of the parties, then the city should file suit seeking recovery against the parents.

On January 4, 1983, the city commenced the present action against the defendants seeking reimbursement of the $4,924.96 incurred by the city for the care of the child. The defendants responded by way of a motion to dismiss claiming, among other things, that the doctrine of *res judicata* barred relitigation of the issue, and that they were not notified of their financial obligations, in violation of their due process rights. On April 19, 1984, judgment was rendered for the city in the amount of $4,924.96, plus interest and costs. The Truells appeal that decision.

## II. *Foster*

On October 6, 1981, Deputy Sheriff Thomas MacQuarrie of the Cheshire County Sheriff's Department filed a petition in the Keene District Court, alleging that Barry Foster, the son of defendant John Foster and stepson of defendant Kathleen Foster, was a child in need of services. *See* RSA 169-D:5 (Supp. 1983). Barry was adjudicated a child in need of services, *see* RSA 169-D:14 (Supp. 1983), and, after a dispositional hearing, was placed at Odyssey House, Inc. in Hampton. *See* RSA 169-D:17 (Supp. 1983). The Town of Walpole was found to be the legally liable unit under former RSA 169-D:29 (Supp. 1981) (current version at RSA 169-D:29 (Supp. 1983)) and was thereby liable for all the expenses incurred in the disposition.

On December 17, 1981, the Keene District Court conducted a "hearing on liability of parents." The Court (*Davis,* J.) found "no ability on the parents to contribute to the support of the minor."

In August 1982, the Town of Walpole, relying on former RSA 169-D:29 (Supp. 1981) (current version at RSA 169-D:29 (Supp. 1983)) and RSA chapter 165 (1977 and Supp. 1983), initiated the present action against the Fosters. It sought reimbursement of $11,235, together with costs and interest, for the placement of Barry at Odyssey House. The town also petitioned the court for permission to place a lien on the Fosters' home, pursuant to RSA 165:28, to secure reimbursement of the expenses that the town incurred under RSA chapter 169-D (Supp. 1983).

The Fosters responded to the writ, asking the court to dismiss the action on the grounds that, first, they had not been afforded notice that the town could seek reimbursement of the expenses incurred in the placement of their child and, second, the town was not entitled to a lien under the provisions of RSA chapter 165 (1977 and Supp. 1983). On January 23, 1984, the Superior Court (*O'Neil,* J.) authorized the town to place a real estate lien on the Fosters' home to secure the reimbursement sought. The Fosters brought this appeal.

## III. *Due Process Claims*

The defendants in both actions first argue that the municipalities failed to provide them with adequate notice of the claims against them in violation of the due process protections guaranteed by part I, article 15 of the New Hampshire Constitution and the fourteenth amendment to the United States Constitution. The substance of their argument is that they were entitled to notice that the proceedings under RSA chapter 169-D (Supp. 1983) could affect their property interests. It is their position that for notice of their statutory liability to pass constitutional scrutiny, it must be adequate and it must be given at a meaningful time.

A reimbursement proceeding pursuant to RSA chapter 169-D (Supp. 1983) is one in which an individual may be deprived of significant property rights and, therefore, implicates due process considerations. *See Duffley v. N.H. Interschol. Ath. Assoc., Inc.,* 122 N.H. 484, 490, 446 A.2d 462, 466 (1982); *White v. Lee,* 124 N.H. 69, 75, 470 A.2d 849, 853 (1983). It is well settled that "[a]n elementary and fundamental requirement of due process . . . is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Central Hanover Tr. Co.,* 339 U.S. 306, 314 (1950); *Sununu v. Clamshell Alliance,* 122 N.H. 668, 672–73, 448 A.2d 431, 434 (1982). The type of notice that is required in a given case depends upon the nature of the governmental interest and the private interests affected. *See Royer v. State Dep't of Empl. Security,* 118 N.H 673, 678, 394 A.2d 828, 831 (1978).

An analysis of the governmental and private interests affected must begin with an examination of the statute. RSA 169-D:5 (Supp. 1983) permits *any* person to file a petition alleging a child is in need of services and prescribes the information to be contained in the petition. Once a legally sufficient petition has been filed, RSA 169-D:6 (Supp. 1983) directs the court to issue a summons to the person having custody or control of the child and to the parents of the child, if the parents do not have custody and control, informing them of the pendency of the petition and requiring them to appear with the child within a specified time period. An adjudicatory hearing is then held to determine whether the child is in need of services. RSA 169-D:14, I (Supp. 1983). If the court so determines, an investigation must be conducted and a report prepared. RSA 169-D:14, III (Supp. 1983). The court then holds a dispositional hearing and orders the least restrictive and most appropriate disposition on the basis of the facts of the case, the investigation report and the dispositional recommendation of the parties and counsel. RSA 169-D:17, I (Supp. 1983).

Once a dispositional order is issued, any expenses incurred are paid in the first instance by the city or town in which the child resided at the time of the filing of the CHINS petition. RSA 169-D:29, I (Supp. 1983). The town has a statutory right to reimbursement from the person chargeable by law for the child's support. *Id.* When the town seeks reimbursement, the court orders payment "as may be reasonable and just, based on the person's ability to pay." *Id.*

The government's interests under RSA chapter 169-D (Supp. 1983) are that the child receives needed services and that the town recovers the costs of those services from the person responsible for the child's support. The private interest is significant, in that the

proceedings under RSA chapter 169-D (Supp. 1983) may result in the permanent loss of property. In many instances, the parents from whom reimbursement is sought already are burdened with financial difficulties. Consequently, such a deprivation could have a meaningful impact on a family's well-being.

RSA chapter 169-D (Supp. 1983) was enacted to provide services to children experiencing behavioral difficulties. RSA 169-D:1, I (Supp. 1983). Parents were to be made aware of their role in the contribution to and solution of their child's problems. RSA 169-D:1, II (Supp. 1983). Although there is the legitimate concern that a parent's pecuniary interests should not be permitted to thwart the purpose of the chapter, this concern does not relieve the government of its constitutional obligation to afford parents the process that is constitutionally due them.

■■■ On the contrary, "[d]ue process under our constitutional republic has, as a primary consideration, the notion that no matter how rich or how poor, all of our citizens are entitled to fundamental fairness" when the government seeks to take action which will deprive them of their property or liberty interests. *Appeal of Public Serv. Co. of New Hampshire*, 122 N.H. 1062, 1072, 454 A.2d 435, 441 (1982). Central to this notion of fundamental fairness is *meaningful notice* of the government's action. *See Petition of Clark*, 122 N.H. 888, 891, 451 A.2d 1303, 1305 (1982).

The plaintiffs argue that the mere existence of RSA 169-D:29 (Supp. 1981), which provided that the municipality incurring expenses under the chapter "shall have a right of action over for such expenses against the person chargeable by law for the child's support and necessities," is adequate notice of the defendants' liability. The plaintiffs rely on the asserted legal maxim that everyone is presumed to know the law. *See Hill v. Spear*, 50 N.H. 253, 261 (1870) (ignorance of law against sale of liquor); *Barlow v. The United States*, 32 U.S. 404, 410 (1833). The plaintiffs, however, misapply the legal maxim. The maxim:

> "is a rule of substantive law or of administration which has been found convenient or necessary to apply in the trial of cases; and it has been held not to be available for the purpose of supplying evidence of a fact material to the controversy nor to prevail against the real truth as to any particular situation, except as regards punishment for a criminal offense or responsibility for actual damage for the violation of private rights."

*Murphy v. Sheftel*, 121 Cal. App. 533, 538–39, 9 P.2d 568, 570 (1932); *Atlas Realty Corp. v. House*, 123 Conn. 94, 101, 192 A. 564, 567

(1937). "The legal presumption . . . is a rule of necessity and is limited in its scope by the reason of it." *Topolewski v. Plankinton Packing Co.*, 143 Wis. 52, 72–73, 126 N.W. 554, 561 (1910); *see Buravski v. Di Meola*, 141 Conn. 726, 729, 109 A.2d 867, 868 (1954).

█ Thus, while it is essential to the due administration of justice that no person avoid liability for his *wrongdoings* on a claim of ignorance of the law, "the law is not so senseless as to make absurd presumptions of fact." *Black v. Ward*, 27 Mich. 191, 200 (1873); 2 C. CHAMBERLAYNE, THE MODERN LAW OF EVIDENCE § 1170, at 1465 (1911). Accordingly, where it is necessary to establish *actual* knowledge, the legal presumption cannot supply it. *Murphy v. Sheftel*, 121 Cal. App. 533, 538, 9 P.2d 568, 570 (1932); *Glieberman v. Fine*, 248 Mich. 8, 13, 226 N.W. 669, 670 (1929); *Topolewski v. Plankinton Packing Co.*, 143 Wis. 52, 73, 126 N.W. 554, 561 (1910); *Black v. Ward*, 27 Mich. 191, 200 (1873); *Queen v. Mayor of Tewkesbury*, 3 Q.B. 629, 635–38 (1868); 2 C. CHAMBERLAYNE, THE MODERN LAW OF EVIDENCE § 1170, at 1467 (1911).

In *White v. Lee supra*, this court considered whether owners of a piece of property which is subject to a tax sale are entitled to notice of an impending sale. We opined that "[t]he fact that the current owners may realize that their property is subject to an annual tax, and may be able to inquire for themselves into the tax status of their property, does not relieve the State of its constitutional obligation to provide notice." *White v. Lee, supra* at 75, 470 A.2d at 853. We held that "'*actual notice* is a minimum constitutional precondition to a proceeding which will adversely affect the liberty or property interests of *any* party . . . .'" *White v. Lee*, 124 N.H. 69, 74, 470 A.2d 849, 852 (1983) (quoting *Mennonite Bd. of Missions v. Adams*, 103 S. Ct. 2706, 2712 (1983)).

█ No provision of RSA chapter 169-D, as it existed at the time the CHINS petitions were filed in the cases before us, required that actual notice of liability for expenses incurred under the chapter be afforded to the parents or the person chargeable at law for the child's support. In fact, parents, as in the instant cases, and the persons responsible for the child's support, did not receive actual notice of their statutory liability until a writ of summons was issued when the city or town that had *already incurred* the expenses sought reimbursement pursuant to former RSA 169-D:29 (Supp. 1981) (current version at RSA 169-D:29 (Supp. 1983)). As more fully discussed below, we conclude that it is fundamentally *unfair* for parents not to be afforded actual notice that proceedings under RSA chapter 169-D (Supp. 1983) may affect their property interests.

■ Under part I, article 15 of our State Constitution, it is fundamental that notice be timely. *See Petition of Clark*, 122 N.H. 888, 890–92, 451 A.2d 1303, 1304 (1982). As we previously have held, "[t]o be considered timely, the notice must give the recipients the opportunity to have a hearing on the government's action at a *meaningful time." Petition of Clark*, 122 N.H. 888, 891, 451 A.2d 1303, 1305 (1982). Although the determination whether notice is timely will vary from case to case, we are persuaded that "[i]f the right to notice . . . is to serve its full purpose, then, it is clear that it must be granted at a time when the deprivation can still be prevented." *Fuentes v. Shevin*, 407 U.S. 67, 81 (1972); *Vermont Nat'l Bank v. Taylor*, 122 N.H. 442, 446, 445 A.2d 1122, 1125 (1982). Otherwise, the right to notice is meaningless. *See Petition of Clark*, 122 N.H. 888, 891–92, 451 A.2d 1303, 1305 (1982).

It is clear that notice by filing a lawsuit after the expenditure does not afford parents meaningful notice. At the time the writ of summons is issued, the deprivation, for all practical purposes, has already occurred. A disposition has been ordered, expenses have been incurred and liability has been statutorily determined. The only matter to be resolved is whether the reimbursement is reasonable and just.

For notice to be meaningful and timely, within the ambit of RSA chapter 169-D (Supp. 1983), it must be granted *prior* to the adjudication and disposition of the CHINS petition, as the adjudicatory and dispositional hearings provide the *only* opportunity for the parents to rectify the child's problem and avoid liability or to be heard on the disposition and, consequently, to *mitigate* any liability for expenses to be incurred. Once the adjudication and disposition have taken place, however, the deprivation becomes irreversible and notice thereafter is meaningless.

The Truells argue that they should have received notice of their impending liability at the time the CHINS petition was signed. We cannot sustain their claim. To require that notice be given at that time would be problematic. RSA 169-D:5 (Supp. 1983) permits *any* person to file a CHINS petition. As the Fosters' case illustrates, a parent may not be the person who files. Consequently, if notice of liability is required at the time of the filing of the CHINS petition, the ultimately liable party may not receive notice.

■ We conclude, however, that notice of liability should have been included in the summons issued by the court to the parents informing them of the pending CHINS petition and requiring them to appear with the child. RSA 169-D:6 (Supp. 1983). The summons is issued before appointment of counsel and *before* adjudication and

disposition of the case. In addition, under the statute, the summons must be issued to both the person in custody and control of the child and the parents, if they and their residence are known. *Id.* Thus, notice by summons under RSA 169-D:6 (Supp. 1983) would be both timely and adequate. It would give the recipients the opportunity to have a hearing on the government's action at a meaningful time, *see Petition of Clark*, 122 N.H. 888, 891, 451 A.2d 1303, 1305 (1982), and it is also the manner which, under all the circumstances, is likely to apprise interested parties of the pendency of the action. *See Sununu v. Clamshell Alliance*, 122 N.H. 668, 672–73, 448 A.2d 431, 434 (1982).

Implementation of this procedure imposes no unreasonable burden on the government, nor will it adversely affect the government's ability to recover the costs incurred on behalf of the child. "Such notice would obviate much of the unfairness inherent in the current notice, while placing a minimal burden on [municipalities]." *Coughlin v. Regan*, 584 F. Supp. 697, 710 (D. Me. 1984).

 ██ "A statute will not be construed to be unconstitutional where it is susceptible to a construction rendering it constitutional." *White v. Lee*, 124 N.H. 69, 77–78, 470 A.2d 849, 854 (1983). Accordingly, we conclude that RSA chapter 169-D, when read in conjunction with the notice requirements set forth in our opinion, does not violate the due process protections of the New Hampshire or United States Constitutions.

We note that, although not pertinent to the outcome of these appeals, in 1983 the legislature amended RSA chapter 169-D to *require* that notice of liability under RSA 169-D:29 (Supp. 1983) be *included* in the summons issued pursuant to RSA 169-D:6. RSA 169-D:6, III (Supp. 1983) now requires the following language to be contained in the summons: "Parents and other individuals chargeable by law for the child's support and necessities may be liable for expenses incurred in this proceeding including the costs of certain evaluations and placements." The inclusion of this language was in response to the justifiable concern that parents coming into contact with the juvenile system were unaware of the fact that they could be charged for the costs of certain expensive evaluations and placements. *Hearings on HB 658, 786-FN, and 525-FN before the Subcomm. of the House Education Committee*, April 14, 1983 (statement of Mr. Zelin).

 The parents in the cases before us did not receive notice of their liability under RSA chapter 169-D (Supp. 1983) *until* the towns sought reimbursement and writs of summons were issued. This deprived them of the opportunity to be heard on the expenses to

be incurred in the dispositions. The notice therefore was untimely and, thus, the defendants are not subject to liability for expenses incurred under former RSA 169-D:29 (Supp. 1981) (current version at RSA 169-D:29 (Supp. 1983)). *See Appeal of Clement*, 124 N.H. 503, 505–06, 471 A.2d 1193, 1195 (1984).

## IV. *Statutory Claim*

In its amended writ, the Town of Walpole alleges that the payments it made on behalf of Barry constitute payments for the support of a pauper which are recoverable under the provisions of RSA 165:20 (Supp. 1983), and that the town is entitled to a lien on the real property of the defendants under RSA 165:28. The town claims that it has the right to maintain an independent action against the Fosters under the general welfare laws and, specifically, RSA chapter 165 (1977 and Supp. 1983) to recover its expenditures under RSA chapter 169-D (Supp. 1983).

As authority for its position, the town cites *In re John M. and David C.*, 122 N.H. 1120, 454 A.2d 887 (1982), asserting that the juvenile laws are not self-contained provisions for determining liability and "that ultimate liability . . . should be determined by reference to the general welfare laws." *Id.* at 1130, 454 A.2d at 893. A review of this court's decision in *In re John M.* and an examination of the relevant statutory language reveals that the town's assertion is overbroad, and that under the general welfare laws recovery of RSA chapter 169-D expenditures is limited to reimbursement from governmental units.

*In re John M.* involved the question of which governmental units are ultimately liable for the expenses incurred in the disposition of children under the State's juvenile laws, RSA chapter 169-B (Supp. 1983), RSA chapter 169-C (Supp. 1983) and RSA chapter 169-D (Supp. 1983). In that case, the City of Laconia did not question its initial liability for the expenses it incurred on behalf of three children. *Id.* at 1129, 454 A.2d at 892. The city did, however, contest its ultimate liability. *Id.* at 1129–30, 454 A.2d at 892. The city argued that, because it could not recover reimbursement from the children's parents and because none of the parents had established legal settlement in Laconia, it could recover its expenses from the County of Belknap under RSA 165:20 (Supp. 1983). *Id.*

This court agreed with the city's claim that the juvenile laws were not self-contained provisions for determining liability for expenses and that the city could seek reimbursement from the county under the State's general welfare laws, RSA chapter 164-A (1977 and Supp. 1983), RSA chapter 165 (1977 and Supp. 1983) and RSA chapter 166 (1977 and Supp. 1983). *Id.* We found support for this

conclusion in a 1982 amendment to the juvenile laws which provides:

> "If a town cannot collect [from the person chargeable by law for the child's support] . . . payments made in behalf of a child, the payments shall be considered assistance to a pauper as to the person chargeable by law for the child's support and necessities; and such person shall be subject to a loss of settlement in accordance with the provisions of RSA 164-A:5 . . . ."

Laws 1982, 25:2 to :4; RSA 169-B:40, I (Supp. 1983); RSA 169-C:27, I (Supp. 1983); RSA 169-D:29, I (Supp. 1983).

We determined that "in order to understand the remedy contained within the liability sections of those laws, reference must be made to the general welfare laws, *where the term [settlement] takes on legal significance.*" *In re John M.*, 122 N.H. at 1131, 454 A.2d at 893 (emphasis added). After examining the welfare laws as they relate to "settlement," we held:

> "[S]ince the parents never gained legal settlement in the city, they are county paupers, meaning 'those for whose support no person or town in this State is chargeable . . . .' RSA 166:1, I (Supp. 1981). Consequently, the county is liable for their support, *see* RSA 166:10 (Supp. 1981), and the City of Laconia has a right to reimbursement from the County of Belknap pursuant to RSA 165:20 (Supp. 1981).
>
> If the parents had gained legal settlement in the city . . ., then the city would have been ultimately liable for the children's expenses for the first 365 days, *see* RSA 169-C:27, I (Supp. 1982), and would have had a right to be indemnified by the county thereafter."

*In re John M.*, 122 N.H. at 1131, 454 A.2d at 893 (citations omitted).

It is clear that our conclusion in *In re John M.* was founded on the statutory language regarding loss of settlement. The case stands for the proposition that, *on the issue of settlement,* the juvenile laws are to be *read in conjunction with* the State's general welfare laws. That issue is relevant *only* to the determination of which *governmental unit* is ultimately liable for expenses incurred in behalf of a child under the juvenile laws. There is no suggestion in *In re John M.* that a municipality may seek recovery of the expenses it incurs under the juvenile laws from a *parent* or the person chargeable by law for a child's support in an *independent* action under the State's general welfare laws. Whether such an action may be maintained is determined by examining the relevant statutory provisions.

■■■■■ We begin our analysis by noting that under the general welfare laws there is no right to recovery of expenses incurred under a separate statutory scheme, unless the legislature clearly provides for such a remedy. *See In re Eva S.*, 121 N.H. 847, 850–51, 435 A.2d 838, 840–41 (1981); *In re Gamble*, 118 N.H. 771, 776–77, 394 A.2d 308, 311 (1978); *see also Juvenile Case #1089*, 119 N.H. 64, 66, 398 A.2d 65, 67 (1979). Although RSA 169-D:29, I (Supp. 1983) makes reference to the general welfare laws, as more fully discussed below, we conclude that recovery under those laws is limited to reimbursement from governmental units.

RSA 169-D:29, I (Supp. 1983) provides:

> "Whenever an order creating liability for expenses is issued by the court under this chapter, any expenses incurred shall be payable by the town in which the child resides at the time the petition is filed . . . . [The] town shall have a right of action over for such expenses against . . . the person chargeable by law for the child's support and necessities. If a town cannot collect for such payments made in behalf of a child, the payments shall be considered assistance to a pauper as to the person chargeable by law for the child's support and necessities; and such person shall be subject to a loss of settlement in accordance with the provisions of RSA 164-A:5 . . . ."

As previously mentioned, the last sentence was added by amendment in 1982. Laws 1982, 25:4. The legislature intended to treat this category of public assistance as aid to a pauper in order to relieve the locality of ultimate liability for expenses incurred. The statutory scheme was amended to permit local governmental entities to recover expenses from *the settlement community* of the persons chargeable by law for the child's support. There is no indication that the legislature intended that reference to the general welfare laws be made for any other purpose than to determine the *governmental unit* ultimately liable for expenses. *See* N.H.H.R. JOUR. 73–74 (1981–1982) (amendment inserts into statutes provision relating to *settlement* of parents *in determining the appropriate legally liable unit*); N.H.S. JOUR. 210, 458 (1981–1982) (amendment relative to the right to recovery of expenses from the *settlement* community of the parents of CHINS).

The legislature specifically provided for recovery against governmental units under the general welfare laws. Had the legislature intended that the general welfare laws be used to recover expenses from parents and the persons chargeable by law for the child's support, it could have so provided, but it did not.

▮▮▮ Public assistance to CHINS is prescribed in the provisions of RSA chapter 169-D (Supp. 1983). RSA 169-D:29, I (Supp. 1983) specifically states that the town shall have a right of action against the person chargeable by law for the child's support and that "the court may make an order as to reimbursement to the appropriate legally liable unit as may be reasonable and just, based on the person's ability to pay." "We recognize the rule that a specific law controls in a specific case over a general law." *In re Gamble*, 118 N.H. 771, 777, 394 A.2d 308, 311 (1978); *see also Juvenile Case #1089*, 119 N.H. 64, 67, 398 A.2d 65, 67 (1979). Accordingly, we hold that the obligation for support is controlled by RSA chapter 169-D (Supp. 1983), and not RSA chapter 165 (1977 and Supp. 1983).

Moreover, the town has no right of action against the Fosters under a plain reading of RSA chapter 165 (1977 and Supp. 1983). RSA 169-D:29, I (Supp. 1983) characterizes the payments as assistance to a pauper *"as to the person chargeable by law for the child's support and necessities."* (Emphasis added.) Accordingly, in the instant case, the Fosters are considered paupers.

▮▮ RSA 165:20 (Supp. 1983) provides that "[i]f a town spends any sum for the support . . . of a pauper having a settlement in another town, or of a county pauper, or of a pauper having relations able to support him under RSA 165:19, such sum may be recovered *from the town, county or relation so chargeable* . . . ." (Emphasis added.) Accordingly, the Town of Walpole must first demonstrate that the Fosters, as paupers, have a settlement in another town, are county paupers or have relations able to support them. Once the above requirement is satisfied, the town may recover sums expended from the town, county or relation chargeable. There is no right of action against the Fosters, as paupers.

▮▮ In addition, the town is not entitled to relief under RSA 165:28. RSA 165:28 provides: "The amount of money spent by a town to support a poor person *under this chapter* shall, except for just cause, be made a lien on any real estate owned by the poor person." (Emphasis added.) Because the money in the instant case was expended under the provisions of RSA chapter 169-D (Supp. 1983), and not under RSA chapter 165 (1977 and Supp. 1983), the town is not entitled to a lien under the plain meaning of RSA 165:28.

Accordingly, we conclude that a municipality's right to recover expenses incurred under RSA chapter 169-D (Supp. 1983), from the person chargeable by law for a child's support, is governed by the specific provisions of RSA chapter 169-D (Supp. 1983). We further conclude, therefore, that the trial court erred in permitting the

Town of Walpole to place a real estate lien on the Fosters' home pursuant to RSA 165:28.

*Reversed.*

SOUTER, J., dissented; the others concurred.

SOUTER, J., dissenting: I respectfully dissent from that portion of the majority opinion holding that any order of reimbursement directed to the parties charged in these cases would violate standards of due process embodied in part I, article 15 of the State Constitution. Of course I agree with the majority that those chargeable for the child's support are entitled to hearing and notice of any claim against them "at a meaningful time and in a meaningful manner." *Royer v. State Dep't of Empl. Security*, 118 N.H. 673, 679, 394 A.2d 828, 831 (1978) (citations omitted). I likewise agree that the requirement of actual notice of such a claim is not satisfied by any presumption that the parties chargeable are supposed to know the law.

Our disagreement is, rather, about the time when actual notice of the claim for reimbursement must be given. The majority hold that notice of the potentiality for such a claim is constitutionally required prior to the adjudication and disposition of the CHINS petition. I would hold that notice of a claim for reimbursement is sufficient, provided that it is given, as it was in these cases, prior to the hearing to determine the amount of reimbursement that the chargeable parties must pay to the town that is liable in the first instance. *See* RSA 169-D:29, I (Supp. 1983).

The majority find notice insufficient at this latter time because by then "liability has been statutorily determined." If the liability of the chargeable parties had already been determined at this point, I would agree with the majority. But in fact the only liability that will have been determined at this time is the liability of the town that must pay the costs of a CHINS disposition in the first instance. The liability of the parties chargeable with reimbursing the town will not have been determined at all. Their liability will not be determined until the court holds a hearing to determine how much it would be "reasonable and just" for them to pay by way of total or partial reimbursement to the town. RSA 169-D:29, I (Supp. 1983).

Under the criteria of what is "reasonable and just," the scope of the hearing on reimbursement is sufficient to afford protection to the parties chargeable. They may present evidence of their financial circumstances. RSA 169-D:29, I (Supp. 1983). And I believe they may dispute the appropriateness of any expense for which their reimbursement is ultimately sought. The extent of their liability, if any, is therefore no foregone conclusion prior to the hearing.

Because this hearing presents a genuine opportunity to determine the extent of any liability for reimbursement, I conclude that the due process demand of fundamental fairness is satisfied when the parties chargeable are given notice of the reimbursement claim in time to prepare for this hearing. *See Appeal of Public Serv. Co. of New Hampshire*, 122 N.H. 1062, 1073, 454 A.2d 435, 441 (1982).

I should only add that if we were deciding what is desirable, rather than what is constitutional, I would agree with the appellants and the majority. The earlier the notice, the better. The legislature agrees, too, for in 1983 it amended the statute to provide notice of the potentiality for a reimbursement order at the time of the original summons in a CHINS case. RSA 169-D:6, III (Supp. 1983). What is desirable, however, is not necessarily required by the constitution's guarantee of due process. I do not believe that the procedure followed in these cases deprived the appellants of fundamental fairness.