Rockingham
No. 97-878

CHARLES G. DOUGLAS, III

v.

CAROLINE G. DOUGLAS

March 10, 1999

*Charles G. Douglas, III*, of Concord, by brief and orally, *pro se.*

*Caroline G. Douglas*, of Concord, by brief and orally, *pro se.*

JOHNSON, J. This case arises from a libel for divorce filed by the plaintiff, Charles G. Douglas, III, against the defendant, Caroline G. Douglas. On appeal, the defendant challenges a number of rulings of the Superior Court (*Coffey*, J.), including its order granting the plaintiff's libel for divorce and disposing of the marital assets. The defendant also challenges the order of the Superior Court (*J. Nadeau*, C.J.) reassigning the case to another judge and transferring venue from Merrimack County to Rockingham County. She further asserts that the rulings and case management of both superior court judges evince a systematic bias against her. We affirm in part, reverse in part, and remand.

The parties, both attorneys, were married in 1991. Between 1990 and 1996, they practiced law together, first under the firm name of

Douglas & George, and later as Douglas & Douglas. In 1996, the plaintiff filed a libel for divorce citing irreconcilable differences which have caused the breakdown of the marriage. *See* RSA 458:7-a (1992) (amended 1998). The defendant filed a cross-libel alleging that the breakdown of the marriage was caused by the plaintiff's allegedly adulterous acts. *See* RSA 458:7, II (1992). Chief Justice Joseph P. Nadeau, the chief justice of the superior court, who initially had assigned the case to himself, later reassigned the case to Justice Patricia C. Coffey after the defendant filed a motion requesting that Chief Justice Nadeau recuse himself.

The case was set for trial in September 1997 after many months of often fierce litigation, including multiple interlocutory petitions to this court. In June 1997, notice was sent to the parties that "[c]ounsel and parties shall be available for trial during the week of September 15, 1997 as may be determined by the Court." On the day of trial, however, the defendant failed to attend, sending her brother, Gregory W. Boudette, as her co-counsel and next friend. *See* RSA 311:1 (Supp. 1998). Boudette is not an attorney. *See* SUPER. CT. R. 14. After allowing Boudette to argue a motion requesting Justice Coffey's removal, the court called a brief recess. During the recess, the court discovered that the defendant had failed to file a power of attorney with the court pursuant to Superior Court Rule 14. The court informed Boudette that he would be unable to continue until the defendant arrived and filed a power of attorney. Boudette then informed the court that he was unable to contact the defendant, and did not know of her location or whether she was en route to the courthouse. The court informed Boudette that unless he was able to contact her and secure her presence at the courthouse, the defendant would be in default. *See* RSA 514:1 (1997). The plaintiff then moved for default.

After Boudette was unable to locate the defendant two hours after the trial actually began, the superior court found the defendant to be in default. In doing so, the court noted that even if Boudette were an attorney and properly represented the defendant, "she would be defaulted." The court found that the defendant had been "noticed" about the time and date of the court proceeding, yet "I don't know where she is, [and] she hasn't notified the Court where she is." The court observed that the defendant had failed to contact the court and that Boudette had represented to the court that he had "no idea" where the defendant was that morning. The court further indicated that if the defendant had notified either the court or Boudette of her whereabouts, the court would have taken that fact into consideration in determining whether or not to default the

defendant. The court then proceeded to take testimony from the plaintiff. The following day, the court issued a permanent decree granting the plaintiff's libel for divorce based on irreconcilable differences, dismissing the defendant's cross-libel, and making a final distribution of the parties' assets. This appeal followed.

On appeal, the defendant argues that the superior court erred in: (1) disqualifying Boudette from acting as her co-counsel and next friend in her absence; (2) holding her in default and ordering a final disposition of the marital assets without further hearing; and (3) ordering a disposition of the marital assets where the defendant did not receive the plaintiff's financial affidavit and proposed final decree in advance of trial. The defendant also contends that it was error for Chief Justice Nadeau to assign the case to Justice Coffey after removing himself from the case, and further that both judges' rulings "reveal[ed] paradigmatic judicial bias coupled with a plethora of circumvented constitutional mandates" that denied the defendant due process.

## I. Default

We begin with the defendant's contention that the trial court erred in entering a default. The defendant argues that due process requires that she be given notice and opportunity to contest the disqualification of her brother before the default was entered. She also contends that due process requires that she be given adequate notice and opportunity to participate in a hearing on the disposition of assets.

It is well settled that we will not disturb a ruling on default absent a clear abuse of discretion or error of law. See Sununu v. Clamshell Alliance, 122 N.H. 668, 673, 448 A.2d 431, 434 (1982). We note that the defendant misconstrues the court's ruling with respect to the default. She contends that she should have had the opportunity to argue that she was improperly defaulted because her brother, acting validly as co-counsel, represented her at trial and therefore her absence was irrelevant. See State v. Tselios, 134 N.H. 405, 406-07, 593 A.2d 243, 244 (1991) (personal appearance of a party at a hearing is not required if that party is represented by counsel and has not been subpoenaed). The trial court, however, in its ruling from the bench holding the defendant in default, specifically stated that the *defendant's absence* as a party was the basis for the default, and that the court would have defaulted the defendant even if Boudette were properly before the court. Accordingly, we will first address the question of whether the court erred in defaulting the defendant based on her absence *as a party* to the action.

The defendant argues that "[a]lthough [a] Defendant is expected to attend final trial regarding her cross-libel for divorce in order to testify under oath . . . there is no requirement [that] a defendant attend the entire trial when represented by counsel." Indeed, "unless a party to an action is subpoenaed, the party can be represented at the hearing or trial by an attorney, and personal appearance is not required." *Tselios*, 134 N.H. at 406-07, 593 A.2d at 244. The superior court, however, has the authority to default a party for material noncompliance with its orders. *Cf.* RSA 514:1. *See generally Cole v. Hobson*, 143 N.H. 14, 15-16, 719 A.2d 560, 561 (1998).

We thus must decide, as a threshold matter, whether the notice that the defendant received properly informed her that she must be available in person, and that she could not simply send counsel in her absence. *See Massachusetts Bonding Co. v. Nudd*, 103 N.H. 1, 3, 164 A.2d 242, 243 (1960) ("notice and an opportunity to be heard are basic essentials of a judicial proceeding" (quotation omitted)); *cf. Boddie v. Connecticut*, 401 U.S. 371, 376-79 (1971) (given the fundamental importance of marriage and divorce, due process considerations regarding notice and the opportunity to be heard are implicated).

We will first analyze the defendant's due process claim under the New Hampshire Constitution, *see State v. Ball*, 124 N.H. 226, 231, 471 A.2d 347, 350-51 (1983), relying on cases interpreting the Federal Constitution only to aid in our analysis. *See Dime Savings Bank of New York v. Town of Pembroke*, 142 N.H. 235, 236, 698 A.2d 539, 540 (1997). Default judgments in a divorce case are proper when the litigants have received adequate notice of the hearing. *See Boddie*, 401 U.S. at 378. Under both Part I, Article 15 of the New Hampshire Constitution and the Fourteenth Amendment of the Federal Constitution, "an elementary and fundamental requirement of due process is notice reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *City of Claremont v. Truell*, 126 N.H. 30, 35, 489 A.2d 581, 585 (1985) (brackets, quotations, and ellipses omitted). In the divorce context, notice to the parties must give the defendant actual notice of the hearing and the issues to be addressed. *See Duclos v. Duclos*, 134 N.H. 42, 44-45, 587 A.2d 612, 614 (1991).

We hold that in this case, the defendant was adequately apprised of the fact that she was, as a party to the action, required to be available for trial the week of September 15th. The trial court

specifically noted that the defendant "was noticed." That finding is supported by the record because as early as the prior June, the defendant received notice that "[c]ounsel and parties shall be available for trial during the week of September 15, 1997." In a later order, that date was confirmed, and the defendant discussed scheduling and the expected content of the final hearing in two separate hearings on pending motions held in August 1997. Furthermore, the order was conjunctive in that it required "counsel *and* parties" to be available. The defendant could not have understood the order to mean that she could send counsel in her stead and be completely unreachable, since the order clearly required the availability of both counsel and the parties. Because we hold that the Federal Constitution provides no greater protection in this context than the State Constitution, *see City of Claremont*, 126 N.H. at 35, 489 A.2d at 585, we hold that the trial court correctly found that the defendant was properly noticed that she must be "available" for trial.

■ We therefore turn to the question of whether the term "available" in the notice sent to the defendant adequately apprised her of the scope of her obligation to the court. *Cf. Sununu*, 122 N.H. at 672-73, 448 A.2d at 434. Here, Boudette represented to the court that he had "no knowledge one way or the other" whether the defendant was en route to the courthouse, and could not represent to the court whether the defendant was even planning on attending the hearing. Further, after being given the opportunity to locate the defendant, Boudette confirmed that he was unable to contact her and conceded that he had no idea where she was. Thus, in the context of this case, we need only decide if the term "available" apprised the defendant that she had an obligation to the court to be readily reachable should her presence in court be required. It is undeniable that at the very least "available" in this context means that a party is "accessible" to the proceeding or the party's presence is "obtainable." *See* WEBSTER'S THIRD NEW INTERNATIONAL DICTIONARY 150 (unabridged ed. 1961) (defining the term "available" as "accessible or may be obtained"); *State v. Mitro*, 700 So. 2d 643, 646 (Fla. 1997); *cf. Commonwealth v. Melendez*, 428 N.E.2d 824, 825 (Mass. Ct. App. 1981) (availability of a witness depends upon ability to procure witness's physical presence in court). Accordingly, we hold that notice received by the defendant was constitutionally sufficient. *Cf. Cole*, 143 N.H. at 17, 719 A.2d at 562.

We must now decide whether the court abused its discretion in holding the defendant in default because neither the court nor

Boudette were able to secure her presence. In deciding whether there was error, we recognize that

> [c]ompeting considerations are involved in such a determination. It is important that cases be decided on their merits, that a party have his day in court and that rules of practice and procedure shall be tools in aid of the promotion of justice rather than barriers and traps for its denial. It is likewise important that litigation be concluded finally and with reasonable dispatch and that the dilatory shall not be rewarded at the expense of the diligent.

*Lewellyn v. Follansbee*, 94 N.H. 111, 114, 47 A.2d 572, 573-74 (1946). We hold that it was entirely appropriate for the court to hold the defendant in default. As noted above, the defendant was not simply absent from the proceedings, but unavailable. She was effectively missing, and her brother was unable to locate her after being given ample opportunity to do so by the court. Both sides had subpoenaed witnesses who were present and ready to proceed. From our review of the record, the defendant simply made no effort to keep either her brother or the court informed of her whereabouts even though she had been ordered to be "available." The court, in concluding that it had no choice but to hold the defendant in default, stated that "[i]f I had any idea where she was, or you [Boudette] represented to me that you knew where she was, then I would take that into consideration in determining whether or not she ought to be defaulted." Accordingly, because the defendant failed to abide by the trial court's scheduling order, we conclude that the court did not abuse its discretion in holding her in default.

█ The defendant, at oral argument, protested that the court should have given her brother more time to find her before declaring a default. We cannot conclude that as a matter of law, the trial court abused its discretion in ordering a default three hours after the hearing was scheduled to begin. Specifically, the defendant's brother, whom the defendant considered to be her co-counsel, conceded that he simply had no idea where she was at that time. Thus it was unclear, from the court's perspective, how long it would take to locate the defendant. Accordingly, we find no error in the trial court's entry of default.

The defendant further contends that even if she were properly defaulted, she would still be entitled to notice and a hearing on the issue of the proper disposition of the parties' marital assets. We agree. We note that although the defendant argues that failure to

hold a separate hearing violated her constitutional rights, we decide the issue as a matter of common law, and need not reach her constitutional claim. *See White v. Town of Wolfeboro*, 131 N.H. 1, 3, 551 A.2d 514, 515 (1988) (constitutional issues will be reached only when necessary).

■ In equity proceedings such as divorce, *see* RSA 491:7, :14 (1997), actions that would constitute a default at law technically result in a judgment *pro confesso* in equity. *See, e.g., O'Brien v. Continental Ins. Co.*, 141 N.H. 522, 523, 687 A.2d 262, 263 (1996). *See generally* 5 R. WEIBUSCH, NEW HAMPSHIRE PRACTICE, CIVIL PRACTICE AND PROCEDURE § 33.27, at 94 (1998). "[A] judgment *pro confesso* results in the admission of all material and well-pleaded allegations of fact." *Koch v. Randall*, 136 N.H. 500, 503, 618 A.2d 283, 285 (1992); *see, e.g., O'Brien*, 141 N.H. at 523-24, 687 A.2d at 263; *cf. Brady v. Mullen*, 139 N.H. 67, 71, 649 A.2d 47, 49 (1994) (unlike a default at law, a decree *pro confesso* admits only pleaded facts, not conclusions of law). The decree *pro confesso*, like the entry of a default, is merely an interlocutory order, *see, e.g., Kennedy v. Shaw*, 119 N.H. 99, 101, 398 A.2d 834, 836 (1979) (decree *pro confesso*); 5 WEIBUSCH, *supra* § 33.02, at 60 (default), and as such entry of a judgment *pro confesso* or default "is a notation of status in the case. Neither a verdict nor a judgment, it is an interlocutory finding which forms the basis for the later entry of judgment upon proof of right and amount." *O'Brien*, 141 N.H. at 524-25, 687 A.2d at 264 (quotation and emphasis omitted); *accord Stewart v. Hicks*, 395 N.E.2d 308, 312 (Ind. Ct. App. 1979). A decree *pro confesso*, therefore, admits only those well-pleaded facts alleged in the libel, and a properly noticed hearing must be held to determine the proper disposition of the parties' marital property. *Cf. Cole*, 143 N.H. at 16, 719 A.2d at 561 (default); *Rokina Optical Co. v. Camera King*, 469 N.E.2d 518, 519-20 (N.Y. 1984) (unless damages are for a sum certain, a default judgment determines liability only, and defaulting party is entitled to a full hearing on damages). We conclude that it was error for the trial court to enter a permanent decree without granting the defaulted defendant a hearing on the proper disposition of the marital assets. *Cf. Jamieson, Inc. v. Copeland Coating Co.*, 126 N.H. 101, 103, 489 A.2d 613, 615 (1985) (default). Accordingly, although we uphold the trial court's granting of the parties' divorce on the basis of irreconcilable differences, we reverse that portion of the permanent decree addressing the value and distribution of the marital assets and remand for a hearing on that issue. *Cf. Rokina Optical Co.*, 469 N.E.2d at 520 (discussing

content of hearing). We note, however, that had the notice of hearing clearly stated that if a party defaulted the court could immediately take up the distribution of marital assets, the hearing on that distribution could have been held on the day default was entered.

The defendant also contends that it was error for the court to disqualify Boudette as next friend and co-counsel. We need not reach this issue because we uphold the trial court's decision defaulting the defendant on the basis of her absence, regardless of her brother's status. Cf. Appeal of City of Portsmouth Bd. of Fire Comm'rs, 137 N.H. 552, 558, 630 A.2d 769, 772 (1993). Furthermore, because we are remanding for further proceedings with respect to the marital assets, we need not reach the defendant's claim that her due process rights were violated by the plaintiff's failure to serve his financial affidavit and proposed decree on the defendant prior to consideration by the court. See Olson v. Town of Fitzwilliam, 142 N.H. 339, 345, 702 A.2d 318, 322 (1997).

## II. Judicial Recusal

The defendant next contends that her due process rights were violated when Chief Justice Nadeau transferred the case to Justice Coffey after he had recused himself. As a preliminary matter, the defendant contends that the procedure for review and recusal of a judge established by Supreme Court Rule 38 is constitutionally inadequate. Because the defendant invokes only the State Constitution in her argument, we need not consider any federal constitutional implications. See Appeal of Atlantic Connections, 135 N.H. 510, 514-15, 608 A.2d 861, 865 (1992). Part I, Article 35 of the New Hampshire Constitution provides in pertinent part:

> It is essential to the preservation of the rights of every individual, his life, liberty, property, and character, that there be an impartial interpretation of the laws, and administration of justice. It is the right of every citizen to be tried by judges as impartial as the lot of humanity will admit.

Supreme Court Rule 38 provides that when a judge's neutrality is in question, the challenged judge must determine whether recusal is appropriate. See generally Taylor-Boren v. Isaac, 143 N.H. 261, 267, 723 A.2d 577, 582 (1998). The defendant contends that this self-enforcing provision does not adequately protect the citizenry from a biased judge who denies, in the first instance, a party's motion for recusal. We disagree. This court has the constitutional and inherent authority not only to discipline members of the

judiciary for misconduct, *see Snow's Case*, 140 N.H. 618, 621, 674 A.2d 573, 575 (1996); N.H. CONST. pt. II, art. 73-a, and to suspend a sitting judge or assign another judge to a case, *see In re Mussman*, 112 N.H. 99, 102-03, 289 A.2d 403, 405-06 (1972) (referencing the right of the citizenry to impartial jurists under Part I, Article 35), but also to review a judge's refusal to grant a motion to recuse, *see, e.g., State v. Linsky*, 117 N.H. 866, 882-83, 379 A.2d 813, 823-24 (1977). We have not hesitated to exercise this authority by holding that a judge must be disqualified and vacating that judge's orders. *See, e.g., Blaisdell v. City of Rochester*, 135 N.H. 589, 594, 609 A.2d 388, 391 (1992). Accordingly, we hold that the defendant's contention is without merit.

■ The defendant next argues that after Chief Justice Nadeau's recusal, any order he issued is necessarily void. Thus, it was improper for him to reassign the case in his capacity as chief justice of the superior court. The plaintiff counters that Chief Justice Nadeau did not in fact "recuse" himself, but rather, after ruling that "there are no facts supporting my recusal," simply transferred the case to Justice Coffey. We need not decide whether Chief Justice Nadeau affirmatively "recused" himself because, assuming without deciding that he did in fact recuse himself, his appointment of Justice Coffey was entirely proper. As the defendant herself points out, "[t]he authorities are uniform, indeed it is black letter law that a disqualified judge may not issue any orders or rulings other than of a 'housekeeping' nature in a case in which he or she is disqualified." *See, e.g., Moody v. Simmons*, 858 F.2d 137, 143 (3d Cir.), *cert. denied*, 489 U.S. 1078 (1988). Clearly, assignment of the superior court's caseload is an administrative function of the chief justice of the superior court acting in his ministerial capacity. *See* SUP. CT. R. 54(5); *cf.* RSA 491:10 (1997). We believe that "[a]s a general rule, a trial judge who has recused himself [or herself] should take no other action in the case except the necessary ministerial acts to have the case transferred to another judge." *El Fenix de Puerto Rico v. The M/Y Johanny*, 36 F.3d 136, 141 (1st Cir. 1994) (quotation omitted). Accordingly, we hold that the task of reassigning a case may permissibly be accomplished by a judge who has been disqualified. *See, e.g., In re Cement Antitrust Litigation (MDL No. 296)*, 673 F.2d 1020, 1024-25 (9th Cir. 1982); *Stringer v. United States*, 233 F.2d 947, 948 (9th Cir. 1956); *cf. Margulies v. Margulies*, 528 So. 2d 957, 960 (Fla. Dist. Ct. App. 1988) (citing principle favorably). *But cf. McCuin v. Texas Power & Light Co.*, 714 F.2d 1255, 1260-61 (5th Cir. 1983). Because Chief Justice Nadeau's

transfer was an appropriate exercise of his administrative duties, we find the defendant's argument to be without merit.

### III. Allegations of Bias

 Finally, the defendant contends that she was "deprived of [her] fundamental due process and equal protection rights [because] the whole record below reveals paradigmatic judicial bias coupled with a plethora of circumvented constitutional mandates to the detriment of the Defendant." We note, however, that despite her claim of grave constitutional error, the argument in her initial brief is short and contains absolutely no authority, constitutional or otherwise, to support her position. Furthermore, her reply brief, while dedicating considerably more time to the issue, again fails to cite any supporting authority. We hold that in the realm of appellate review, a mere laundry list of complaints regarding adverse rulings by the trial court, cf. *Matter of Hipp, Inc.*, 5 F.3d 109, 116 (5th Cir. 1993) (adverse rulings do not render a judge biased), without developed legal argument, is insufficient to warrant judicial review. *See State v. Chick*, 141 N.H. 503, 504, 688 A.2d 553, 554 (1996) (insufficient elaboration of constitutional claim renders argument waived); *Keenan v. Fearon*, 130 N.H. 494, 499, 543 A.2d 1379, 1382 (1988) ("offhand invocations" of constitutional rights supported by neither argument nor authority warrant no extended discussion). Accordingly, we find the defendant's argument waived.

*Affirmed in part; reversed in part; remanded.*

BROCK, C.J., did not sit; the others concurred.