# THE STATE OF NEW HAMPSHIRE

# SUPREME COURT

### In Case No. 2014-0459, <u>West Epping Water Company v. New Hampshire Department of Treasury & a.</u>, the court on September 24, 2015, issued the following order:

Having considered the brief, memorandum of law, and oral arguments of the parties, the court concludes that a formal written opinion is unnecessary in this case. The petitioner, West Epping Water Company (West Epping Water), appeals an order of the Circuit Court (<u>Weaver</u>, J.) finding it in default and denying its motion for partial summary judgment on its petition to quiet title. We reverse and remand.

The pertinent facts are as follows. In May 2012, West Epping Water brought the instant petition to quiet title to approximately 10 acres of land in Epping known as "Little Egypt." Among the named respondents are four decedents (Israel Francis Norris, Elizabeth Gertrude Norris, Irvin F. Norris, and Dorothy Norris Kirkland), three alleged beneficiaries of Dorothy's estate (Karen M. Condylis, Joel R. Porter, Sr., and Joan F. Thompson), and the New Hampshire Department of Treasury.

The petition alleges a chain of title that began with Israel Francis Norris. According to the petition, upon Israel's death, the property passed to Irvin Norris. Irvin then deeded the property to Henry Thibeault in 1945, and Thibeault deeded the property to David Elias in 1954. Upon his death, Mary Elias inherited the property from David Elias. In 1965, she deeded the property to Richard Mallouf and his father, although the deed was not recorded until 1968. The petition alleges that Richard became the sole owner of the property when his father died on February 9, 2004, and that, in August 2009, West Epping Water purchased it from Richard for $60,000.

The quiet title petition further alleges that another probate action had been brought by the Society for the Protection of New Hampshire Forests (the Society). According to West Epping Water's petition, the Society previously opened probate proceedings for the estates of Israel, Elizabeth, Irvin, and Dorothy (the Estates). It is alleged in other pleadings in this case that the Society owns land that abuts "Little Egypt," that its deed erroneously includes "Little Egypt" in the property description, and that the probate proceedings were commenced to correct the error in the Society's deed. It is also alleged that, before he retired, Michael Speltz was a Society employee and that he had been appointed as the administrator of the Estates.

The Estates answered the petition in August 2012. With respect to the chain of title alleged in West Epping Water's petition, the Estates admit only that the property was owned by Israel and passed to Irvin. In a December 2012 pleading, the Estates aver* that, in fact, Irvin did not convey the property to Thibeault. They allege that, when Irvin died intestate, "his only child, Dorothy . . . , inherited the remainder interest in the subject property subject to the life estate of Elizabeth . . . , her mother and the widow of Irvin[ ]." The pleading asserts that, when Elizabeth died in 1963, her life estate was extinguished and "the fee interest was then held by her daughter, Dorothy." The pleading further alleges that either Dorothy "devised the parcel to [her] three neighbors (Condylis, Thompson, Porter) by [a] non-probated will," or, if the court did not accept that will, "the property . . . escheated to the State . . . on [Dorothy's] death in 2000, as she died without heirs within the statutory degree of kinship." Judgment <u>pro</u> <u>confesso</u> was entered against Condylis, Porter, and Thompson because of their failure to appear in the quiet title action.

In January 2013, the probate proceedings involving the Estates were consolidated with West Epping Water's petition for quiet title for hearing purposes only. In February 2013, West Epping Water's original counsel withdrew, and, until November 2013, West Epping Water was represented by its president, Ricky F. St. Jean.

On July 26, 2013, the Estates moved for conditional default, alleging that West Epping Water had failed to answer their second set of interrogatories and document requests, which West Epping Water had received on June 19, 2013. On August 21, 2013, the court granted the conditional default and allowed West Epping Water 10 days from its receipt of the court's order either to answer the interrogatories or to file a motion to strike. Although West Epping Water prepared responses to the interrogatories, which St. Jean signed before a notary on August 30, 2013, they were not provided to the Estates until October 31, 2013. Moreover, West Epping Water did not move to strike the conditional default until December 11, 2013.

The Estates moved for final default on September 9, 2013. On September 17, 2013, West Epping Water objected to the motion, asserting that it had already responded to the interrogatories and stating that such responses were attached to its objection. However, the responses were not attached.

In February 2014, the trial court held a hearing on offers of proof on the Estates' motion for final default. The trial court found that West Epping Water failed to timely answer the interrogatories at issue. The court found that St. Jean's proffered testimony that he provided the interrogatory responses to the Estates in August 2013 was not credible. The court explained:

---

* Although this pleading, like numerous other pleadings in this case, was filed by "Michael Speltz of the Society for the Protection of New Hampshire Forests," the trial court found, and the record supports its finding, that Speltz appeared in only his capacity as administrator of the Estates.

Although [West Epping Water] may have signed the interrogatories on August 30, 2013, it is clear that it failed to provide those answers to the [Estates] for several months. Over a several month period, [West Epping Water] had opportunity after opportunity to check its files and to provide the signed original answers to the interrogatories to the [Estates], but it failed to do so time and again.

The court also observed that, when it was self-represented, West Epping Water had: (1) falsely certified the dates on which pleadings were mailed to the respondents; (2) recorded with the county registry of deeds an affidavit that supported its quiet title claims; (3) referred in pleadings to opposing counsel as a "jerk"; and (4) cut trees on the subject property, despite the ongoing litigation. Because of West Epping Water's conduct, the court found that the Estates had "been forced to file an emergency ex parte motion to deal with trees being cut on the property, a motion to strike the filing of an affidavit at the registry, and a motion to strike numerous pleadings." For this conduct, the court had twice awarded attorney's fees and costs to the Estates in 2013, but as of the February 2014 hearing, West Epping Water had failed to pay them. Because this was not the first time that West Epping Water had engaged in unacceptable litigation conduct, the court concluded that "any sanction less than the entry of final default would be improper." The court observed that the prior "sanctions . . . appear to have had little effect on [West Epping Water] given the continued nature, tenor and substance of its pleadings."

Three days before the court issued its order finding West Epping Water in final default, West Epping Water filed a motion for partial summary judgment, asserting that the Society had proceeded as a party in the case and lacked standing to do so. The court denied the motion because "Default Judgment has [been] entered."

In response to West Epping Water's motions for reconsideration of both the final default judgment and the denial of its partial summary judgment motion, the court clarified that the Society is not a party to the quiet title action and that Speltz had appeared in the case solely in his capacity as the administrator of the Estates. With regard to the standing of the Estates, the court concluded that, contrary to West Epping Water's assertions, the Estates had not disclaimed any interest in the property, and in fact, had alleged a sufficient interest in the property to establish standing to defend against the quiet title petition. This appeal followed.

West Epping Water first argues that the trial court should have dismissed the Estates from its quiet title action pursuant to RSA 498:5-c (2010). RSA 498:5-c requires a respondent in a quiet title action to state in answer "whether or not he claims any estate or interest in, or encumbrance on, such property, or any part thereof, and, if so, the nature and extent of the estate, interest or encumbrance which he claims." Under RSA 498:5-c, "the

court shall, . . . without further proof, render judgment" against "any defendant, who, by his answer, disclaims all estate or interest in or encumbrance on such property." We review the trial court's statutory interpretation <u>de</u> <u>novo</u>. <u>Appeal of Local Gov't Ctr.</u>, 165 N.H. 790, 804 (2014).

West Epping Water asserts that the Estates "disclaim[ed] all estate or interest in" the property because, in their December 2012 pleading, they asserted no present claim to it. We agree. According to that pleading, when Dorothy died, the subject property either passed to Condylis, Thompson, and Porter according to Dorothy's non-probated will, or it "escheated to the State." Thus, according to their December 2012 pleading, the Estates have no present claim to the subject property and, pursuant to RSA 498:5-c, they should have been dismissed from this quiet title action "without further proof."

West Epping Water next asserts that the trial court erred by entering a default judgment against it. West Epping Water argues that the default judgment constituted an unsustainable exercise of discretion. "The imposition of sanctions is a matter left largely to the discretion of the trial court." <u>Cole v. Hobson</u>, 143 N.H. 14, 15 (1998) (quotation omitted). "In reviewing a discovery sanction, we will not reverse the trial court's ruling unless it constitutes an unsustainable exercise of discretion." <u>Whitaker v. L.A. Drew</u>, 149 N.H. 55, 58 (2003). In deciding whether the trial court unsustainably exercised its discretion by holding a party in default, "we recognize . . . competing considerations." <u>Douglas v. Douglas</u>, 143 N.H. 419, 425 (1999) (quotation and brackets omitted). On the one hand, "[i]t is important that cases be decided on their merits, that a party have his day in court and that rules of practice and procedure shall be tools in [the] aid of the promotion of justice rather than barriers and traps for its denial." <u>Id</u>. (quotation omitted). On the other hand, "[i]t is likewise important that litigation be concluded finally and with reasonable dispatch and that the dilatory shall not be rewarded at the expense of the diligent." <u>Id</u>. (quotation omitted).

Under the unique circumstances of this case, we conclude that the trial court unsustainably exercised its discretion by entering a default judgment against West Epping Water in favor of the Estates because, as previously discussed, once the Estates disclaimed interest in the subject property, they should have been dismissed from this action.

<u>Reversed and remanded</u>.

DALIANIS, C.J., and HICKS, CONBOY, and LYNN, JJ., concurred.

**Eileen Fox,**
**Clerk**

4